**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
IN RE MERRILL LYNCH AUCTION        :      Master Case File
RATE SECURITIES LITIGATION      :      No. 09-md-2030 (LAP)
                                    :
------------------------------------------------------------:      **ECF Case**
This Document Relates To            :      **Electronically Filed**
No. 1:09-cv-5403-LAP              :
------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT**

A. Inge Selden III
Carl S. Burkhalter
Maynard, Cooper & Gale, P.C.
1901 6th Avenue North
Suite 2400
Birmingham, AL 35203
205.254.1000

Attorneys for Defendant Merrill Lynch,
  Pierce, Fenner & Smith Incorporated

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................... iii

PRELIMINARY STATEMENT ................................................................. 1

FACTUAL ALLEGATIONS ..................................................................... 2

ARGUMENT ............................................................................................ 5

I.   THE COMPLAINT FAILS TO STATE A DISCLOSURE CLAIM UNDER
     SECTION 10(B) AND RULE 10-B(5)................................................... 5

     A.   Community Trust Has Not Identified a Misrepresentation or Omission. ........... 6

          1.   Community Trust Fails To Identify an Omission of Material
               Fact.................................................................................... 6

          2.   Community Trust Also Fails to Identify A Material
               Misrepresentation............................................................... 8

               a.   The Statements Cited By Community Trust Were
                    Truthful When Made.................................................. 8

               b.   Any Potential Misrepresentations Are Immaterial. ................ 9

     B.   Community Trust Has Failed To Sufficiently Plead Scienter. ............. 10

          1.   The Non-Fraudulent Inferences Are More Compelling Than
               Any Inference of Scienter. ................................................. 11

          2.   The Mere Receipt of Fees and a General Desire for Profitability
               Do Not Permit a Compelling Inference of Scienter. .............. 12

     C.   Community Trust Has Failed To Sufficiently Plead Reliance............. 12

     D.   Community Trust Has Failed To Sufficiently Plead Loss Causation. ............... 14

II.  THE COMPLAINT FAILS TO STATE A MARKET MANIPULATION CLAIM. .... 16

     A.   Community Trust Has Failed to Plead Fraudulent Intent of Loss
          Causation.......................................................................... 16

     B.   Community Trust Has Failed To Identify Any Manipulative Acts. .................. 16

      C.      Community Trust Has Failed To Plead Reliance. ...............................................17

III.     COMMUNITY TRUST'S SECURITIES CLAIMS ARE TIME-BARRED. ................18

IV.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER STATE LAW. ...............18

      A.      Community Trust's Claim Under the Kentucky Securities Law Fails. ..............18

      B.      Community Trust's Claim of Common Law Fraud and Deceit Fails................19

      C.      Community Trust's Claim for Breach of Fiduciary Duty Fails.........................19

      D.      Community Trust's Claim for Negligent Misrepresentation Fails. ...................19

      E.      Community Trust's Claim for Breach of Implied Covenant of Good Faith and Fair Dealing Fails...................................................................................20

CONCLUSION.............................................................................................................................20

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Adler v. Berg Harmon Assocs.*,
    816 F. Supp. 919 (S.D.N.Y. 1993)................................................................................13

*Affiliated Ute Citizens v. United States*,
    406 U.S. 128 (1972)........................................................................................................14

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009)......................................................................................................5

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007).................................................................................2, 16, 17

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..........................................................................................................1

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................................5, 10

*Citibank, N.A. v. K-H Corp.*,
    968 F.2d 1489 (2d Cir. 1992).........................................................................................14

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)...............................................................................................2

*Davidoff v. Farina*,
    No. 04 Civ. 7617, 2005 WL 2030501 (S.D.N.Y. Aug. 22, 2005) ................................11

*de Kwiatkowski v. Bear, Stearns & Co., Inc.*,
    306 F.3d 1293 (2d Cir. 2002).........................................................................................19

*Dura Pharm. Inc. v. Broudo*,
    544 U.S. 336 (2005)........................................................................................................15

*ECA v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009).........................................................................................5, 6

*Grisby v. UPS Ground Freight, Inc.*,
    No. 2007-CA-002401-MR, 2009 WL 1636293 (Ky. June 12, 2009)............................20

*Harsco Corp. v. Segui*,
    91 F.3d 337 (2d Cir. 1996).............................................................................................13

*Healthcare Fin. Group, Inc. v. Bank Leumi USA*,
  No. 08 Civ. 11260, 2009 WL 3631036 (S.D.N.Y. Oct. 26, 2009) ................................15

*Heliotrope Gen., Inc. v. Ford Motor Co.*,
  189 F.3d 971 (9th Cir. 1999) ......................................................................................14

*In re Bristol-Myers Squibb Sec. Litig.*,
  312 F. Supp. 2d 549 (S.D.N.Y. 2004)...........................................................................9

*In re Citigroup Auction Sec. Litig.*,
  2009 WL 2914370 (S.D.N.Y. Sept. 11, 2009).......................................10, 12, 13, 16, 17

*In re GlaxoSmithkline PLC*,
  No. 05 Civ. 3751, 2006 WL 2871968 (S.D.N.Y. Oct. 6, 2006) ....................................18

*In re IPO Sec. Litig.*,
  544 F. Supp. 2d 277 (S.D.N.Y. 2008)....................................................................8, 9, 13

*In re Loral Space & Comm'ns Ltd. Sec. Litig.*,
  No. 01 Civ. 4388, 2004 WL 376442 (S.D.N.Y. Feb. 27, 2004) ....................................11

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  289 F. Supp. 2d 416 (S.D.N.Y. 2003)...........................................................................12

*In re WOW Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) ......................................................................................11

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)........................................................................................12

*Kemp v. Universal Am. Fin. Corp.*,
  No. 05 Civ 9883, 2007 U.S. Dist. LEXIS 2162 (S.D.N.Y. Jan. 10, 2007)................9, 10

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
  No. 07 Civ. 0976, 2008 U.S. Dist. LEXIS 76670 (S.D.N.Y. Sept. 30, 2008) ...............10

*LC Capital Partners, L.P. v. Frontier Ins. Group, Inc.*,
  318 F.3d 148 (2d Cir. 2003)........................................................................................18

*Lentell v. Merrill Lynch & Co., Inc.*,
  396 F.3d 161 (2d Cir. 2005)..............................................................5, 6, 12, 14, 15, 18

*Presnell Const. Managers, Inc. v. EH Const., LLC*,
  134 S.W.3d 575 (Ky. 2004) ........................................................................................20

*Rombach v. Chang,*
 355 F.3d 164 (2d Cir. 2004)...........................................................................8

*Santa Fe Indus., Inc. v. Green,*
 97 S. Ct. 1292 (1977).............................................................................16, 17

*Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.,*
 412 F.3d 103 (2d Cir. 2005)..........................................................................13

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,*
 128 S. Ct. 761 (2008).......................................................................................6

*Teamsters Local 445 Freight Division Pension Fund v. Bombardier, Inc.,*
 No. 05 Civ. 1898, 2006 WL 2161887 (S.D.N.Y. Aug. 1, 2006) ....................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
 551 U.S. 308 (2007)..................................................................................11, 12

*United States v. Santoro,*
 302 F.3d 76 (2d Cir. 2002)............................................................................19

*UPS v. Rickert,*
 996 S.W.2d 464 (Ky. 1999)............................................................................19

**STATUTES**

Federal Rule of Evidence 201(b)(2) ..................................................................2

Federal Rule of Civil Procedure 9(b) .........................................................5, 16

15 U.S.C. § 78u-4(b)(2) .............................................................................6, 10

K.S.R. § 292.320...........................................................................................19

K.S.R. § 292.480(1)......................................................................................19

Defendant Merrill Lynch , Pierce, Fenner & Smith Incorporated ("Merrill Lynch") respectfully submits this memorandum in support of its motion to dismiss the Second Amended Complaint ( the "Complaint") in its entirety and with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

One of the casualties of the recent credit crisis is the market for auction rate securities ("ARS"). A market that once flourished has nearly ground to a halt after a series of unprecedented auction failures. Investors who owned ARS at the time of the failures are unable to liquidate their investments at par value and must retain their ARS until maturity or the market rebounds. Plaintiff Community Trust Bank, Inc. ("Community Trust") is among the current holders of ARS who have been affected by auction failures. Community Trust seeks to escape the current illiquidity of its investment through a host of claims, all premised on the allegation that Merrill Lynch was covertly manipulating the ARS market by submitting bids on its own behalf. The fatal flaw in Community Trust's argument is that the clandestine behavior it accuses Merrill Lynch of was not actually secretive. All of the alleged omissions and deceptive practices identified in the Complaint were fully disclosed to Community Trust and the market as a whole.

The securities laws are designed to promote full disclosure so that investors can make informed choices; they are not "a scheme of investor's insurance." *Basic Inc. v. Levinson*, 485 U.S. 224, 252 (1988) (White, J. concurring in part and dissenting in part). Community Trust was fully informed about the nature and risks of ARS, including Merrill Lynch's role in the market,

---

[1] As requested by the Court, Merrill Lynch adopts and incorporates the arguments made by Lead Counsel for Merrill Lynch in its Memorandum of Law in Support of Defendants' Motion to Dismiss (Pacer Doc. No. 12) and its Reply Memorandum (Pacer Doc. No. 19).

1

and still chose to invest in ARS. That the investment turned out differently than Community Trust hoped does not convert lawful behavior into fraud.

## FACTUAL ALLEGATIONS[2]

Auction rate securities are debt instruments that have long-term maturities, but yield varied interest rates based on periodic "Dutch auctions" of each security. (Compl. ¶ 12). Current and prospective investors submitted bids through a broker-dealer, such as Merrill Lynch, and based on the bids, the auction agent set the interest rate for the next period at the lowest rate of return at which all of the available securities would be purchased or held, known as the "clearing rate." (*Id.* ¶¶ 17, 18). If insufficient bids existed, then the auction "failed," and the current holders of the securities retained ownership of the ARS until a subsequent, successful auction. (*Id.* ¶ 18). During this holding period, owners of the ARS continue to earn a default rate of interest, as outlined in the Private Placement Memorandum ("PPM") for the ARS purchased by Community Trust. (*See, e.g.*, FNMA PPM (Exh. A)).

As a component of the successful auction market, Merrill Lynch, and other broker-dealers, routinely submitted bids for its own account in ARS auctions. The SEC conducted an investigation of the ARS market and, in 2006, issued a publicly-available order that concluded that broker-dealers, including Merrill Lynch, had "intervened in auctions by bidding for their proprietary account" to prevent auction failures and set clearing rates without adequate

---

[2] In ruling on a motion to dismiss, the Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (holding district court was entitled to consider stock purchase agreement, offering memorandum and warrant as "integral to [plaintiff's] complaint"). The Court may also take judicial notice of other facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2).

disclosures. ("2006 SEC Order") (Exh. B at 6).[3] The order expressly stated that it did "*not*

prohibit broker-dealers from bidding for their proprietary accounts when properly disclosed."

(*Id.* at 6 n.6 (emphasis added)).

In January 2006, Community Trust, a Qualified Institutional Investor, purchased

$10,050,000 in ARS connected to preferred stock issued by the Federal National Mortgage

Association ("Fannie Mae") through a private placement. (Compl. ¶ 24); (*See* January 2006

Trade Confirmation (Exh. C)). The PPM provided to Community Trust detailed the auction

process and the role Merrill Lynch played in the auction market, (*see* Exh. A); (Exh. C), and

included the following disclosures:

- "As a Broker-Dealer, [Merrill Lynch] is permitted, but not obligated to, submit Orders in Auctions for its own account either as a Bidder or a Seller and routinely does so in its sole discretion."

- "Merrill Lynch's interests in conducting an Auction may differ from those of Existing Holders and Potential Holders who participate in Auctions."

- "Merrill Lynch routinely places one or more Bids in an Auction for its own account to acquire [ARS] for its inventory, to prevent an Auction Failure Event or an Auction from clearing at a rate that Merrill Lynch believes is higher than the market for similar securities at the time it makes its Bid."

- "Because of these practices, the fact that an Auction clears successfully does not mean that an investment in the [ARS] involves no significant liquidity or credit risk."

- "Investors should not assume that Merrill Lynch will do so, or that Auction Failure Events and unfavorable Auction Rates will not occur."

- "For many auction rate securities, Merrill Lynch has been appointed by the issuer of the securities to serve as a dealer in the auction and is paid by the issuer for its services," and "[a]s a result, Merrill Lynch's interests in conducting an auction may differ from those of investors who participate in auctions."

---

[3] *See* http:// www.sec.gov/litigation/admin/2006/33-8684.pdf

(Exh. A at 10-11). The PPM also stated that failed auctions were possible and "under certain circumstances, Existing Holders may not have the liquidity of investment." (*Id.* at 17).

In August 2006, in response to the 2006 SEC Order, Merrill Lynch again detailed the features of the auction market in a document titled *Description of Merrill Lynch's Auction Rate Securities Practices and Procedures* ("ARS Practices and Procedures") that was posted on the Merrill Lynch website and noticed to current and future investors. (Exh. D); (Compl. ¶ 37). The ARS Practices and Procedures contained the following disclosures:

- "Merrill Lynch receives underwriting fees for underwriting issuances of auction rate securities."

- Merrill Lynch entered broker-dealer agreements with issuers and received fees for operating auctions.

- "Merrill Lynch plays multiple roles in the auction rate securities market, including providing services to issuers of auction rate securities, acting as an agent for investors . . . and purchasing and selling as principal for Merrill Lynch's own account."

- "Merrill Lynch's interest in participating in [the ARS] market may differ from yours."

- "Merrill Lynch is permitted, but not obligated, to submit orders in auctions for its own account either as a bidder or a seller, or both, and <u>routinely</u> does so in its sole discretion."

- "Merrill Lynch may <u>routinely place one or more bids in an auction for its own account</u> to acquire auction rate securities for its inventory, <u>to prevent auction failure</u> . . . or an auction from clearing at a rate that Merrill Lynch believes does not reflect the market for the securities."

- "Bids by Merrill Lynch or by those it may encourage to place bids are likely to affect the clearing rate, including preventing the clearing rate from being set at the maximum rate or otherwise causing bidders to receive a higher or lower rate than they might have received had Merrill Lynch not bid or not encouraged others to bid."

- "Because of these practices, the fact that an auction clears successfully does not mean that an investment involves no significant liquidity or credit risk."

- "Investors <u>should not assume</u> that Merrill Lynch will [continue to place support bids] or <u>that auction failures will not occur</u>."

(Exh. D) (emphasis added).

In late 2007, based in large part on the widespread credit crisis, the demand for ARS began to decrease. (Compl. ¶ 42). In February 2008, Merrill Lynch, and other broker-dealers, stopped placing support bids in auctions. (*Id.* ¶ 27). Those auctions began to fail, and then the entire ARS market, engulfed in a crisis of confidence, collapsed. (*Id.*). Community Trust sold $150,000 of its Fannie Mae ARS in April 2008 and still owns $9.9 million in the ARS, which continue to pay the maximum interest rate pursuant to the PPM. (Compl. ¶ 24); (*See* Exh. A). Unsatisfied with this arrangement, Community Trust sought to escape the consequences of the deal to which it originally agreed and filed this action in the Eastern District of Kentucky on December 31, 2008. (Compl. ¶ 5) (PACER Doc. No. 1). After transfer to this Court, Community Trust filed a Second Amended Complaint, asserting violations of violations of Section 10(b) of the Exchange Act and Rule 10b-5 and violations of state securities law and common law.

## ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed." *Twombly*, 127 S. Ct. at 1974. But claims that sound in fraud must be pleaded with greater specificity under Federal Rule of Civil Procedure 9(b), which "is applied assiduously to securities fraud." *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 168 (2d Cir. 2005). Under the PSLRA and Rule 9(b), the circumstances constituting fraud must be pleaded with particularity and "supported by specific factual allegations." *Id.*; *ECA v. JP Morgan Chase Co.*, 553 F.3d 187, 197 (2d Cir. 2009).

I.    **THE COMPLAINT FAILS TO STATE A DISCLOSURE CLAIM UNDER SECTION 10(B) AND RULE 10-B(5).**

"To state a claim for relief under § 10(b) and Rule 10b-5, plaintiff[] must allege that Merrill Lynch (1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiff[] relied; and (5) that plaintiff['s] reliance was the proximate cause of [its] injury." *Lentell*, 396 F.3d at 172; *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 128 S. Ct. 761, 768 (2008). Because Community Trust failed to sufficiently plead these elements, its claim should be dismissed.

### A.    Community Trust Has Not Identified a Misrepresentation or Omission.

The Complaint fails to "specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading," as required by PSLRA. *ECA*, 553 F.3d at 197 (quoting 15 U.S.C. § 78u-4(b)(1), (2)). For instance, the Complaint vaguely asserts that "[t]hroughout 2006 until early 2008, Merrill Lynch, in the information provided verbally and in writing to Community Trust by its authorized brokers Jason Stanley and/or Josh Burden, among other Merrill Lynch sources" failed to disclose certain facts about the auction market. (Compl. ¶ 33). Such opaque statements make it difficult, if not impossible, for Merrill Lynch or the Court to determine the context or falsity of the statement and fail to approach the PSLRA standard.

### 1.    Community Trust Fails To Identify an Omission of Material Fact.

Even if the allegations in the Complaint were sufficiently specific, Community Trust has still failed to identify an omission of material fact. The exact information that Community Trust alleges Merrill Lynch concealed from the investors was fully disclosed in the ARS PPM, the 2006 SEC Order, and the ARS Practices and Procedures. Community Trust cannot now claim ignorance of facts and risks about which it was repeatedly warned.

Community Trust alleges that Merrill Lynch failed to disclose that it "was placing orders for its own account by using support bids" and "routinely intervened in auctions for [its] own

economic benefit, to set rates and prevent all-hold auctions and failed auctions." (Compl. ¶¶ 33 (b), (c); 19). But Merrill Lynch specifically disclosed in the PPM that Merrill Lynch "**routinely** places one or more Bids in an Auction for its own account . . . to prevent an Auction Failure Event or an Auction from clearing at a rate that Merrill Lynch believes is higher than the market for similar securities at the time it makes its Bid." (Exh. A at 10 (emphasis added)). The ARS Practices and Procedures made similar disclosures: "Merrill Lynch is permitted, but not obligated, to submit orders in auctions for its own account either as a bidder or a seller, or both, and **routinely** does so in its sole discretion." (Exh. D at 15) (emphasis added).

Community Trust alleges that Merrill Lynch failed to disclose "that the auction rate securities [Merrill Lynch] was selling were only liquid at the time of sale because Merrill Lynch and other broker-dealers in the auction market were artificially supporting and manipulating the market." (Compl. ¶ 33 (e), (f)). Again, this information was fully disclosed to Community Trust in the PPM: because of the practice of placing support bids, "the fact that an Auction clears successfully does not mean that an investment in the [ARS] involves no significant liquidity or credit risk" and "[i]nvestors should not assume that Merrill Lynch will do so, or that Auction Failure Events and unfavorable Auction Rates will not occur." (Exh. A at 11); (*see* Exh. D at 16).

Community Trust also asserts that Merrill Lynch failed to disclose "a clear conflict of interest because in the auction market Merrill Lynch was acting simultaneously on behalf of the issuer, . . . the investor, . . . and on their own behalf" and was "acting in ways adverse to the interests of Community Trust." (Compl. ¶ 33 (a), (d)). However, the PPM expressly informed Community Trust that it "is paid by the issuer for its services" in auctions and "receives a remarketing or service fee from the issuer" based on the amount of securities "sold or placed through Merrill Lynch." (Exh. A at 11). The ARS Practices and Procedures confirmed: "Merrill

Lynch plays multiple roles in the auction rate securities market, including providing services to issuers of auction rate securities, acting as an agent for investors . . . and purchasing and selling as principal for Merrill Lynch's own account." (Exh. D at 4).

      2.    <u>Community Trust Also Fails To Identify a Material Misrepresentation.</u>

Community Trust summarily alleges that Merrill Lynch misrepresented that ARS "were highly liquid, were safe for short-term investing and were the same as cash or money markets." (Compl. ¶¶ 43, 32). Community Trust purports to support this accusation with a hodgepodge of non-descript references to statements by Merrill Lynch brokers, (*id.* ¶ 32); general statements by unidentified persons from 2006 through 2008, (*id.* ¶ 33-34); internal research reports, (*id.* ¶ 34); and vague misrepresentations to "investors," (*id.* ¶ 35). Aside from the clear pleading deficiencies, Community Trust has still failed to identify an actionable statement of material fact.

      a.    *The Statements Cited by Community Trust Were Truthful When Made.*

"Where a complaint alleges a false statement, the complaint must 'state with particularity the specific facts in support of [plaintiffs'] belief that [defendants'] statements were false *when made*.'" *In re IPO Sec. Litig.*, 544 F. Supp. 2d 277, 285 (S.D.N.Y. 2008) (quoting *Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004)) (emphasis added). The Complaint alleges that general statements about the liquidity of ARS that were allegedly made by agents of Merrill Lynch in January 2006 were misleading. (Compl. ¶ 32). However, Community Trust fails to offer any factual support for the contention that these statements were false when made: Nothing in the Complaint suggests that, in 2006, ARS were not liquid, safe, short-term investments.

Community Trust also cites general statements by Merrill Lynch brokers and written statements in internal research reports that touted the liquidity of ARS from 2006 through early 2008, (*id.* ¶ 34), but again, fails to allege facts that would establish that these statements were

false when made. By Community Trust's own allegations, the auction market was liquid until mid-February 2008. (*Id.* ¶ 44). Community Trust has failed to explain how it was fraudulent to describe ARS as liquid when they were in fact liquid. "Mere allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud." *In re IPO Sec. Litig.*, 544 F. Supp. 2d at 287.

        *b.*     *Any Potential Misrepresentations Are Immaterial.*

To the extent that the Complaint identifies any alleged misstatements, such statements fall within a safe harbor and are immaterial and non-actionable. The following are immaterial as a matter of law: (1) general statements of optimism; (2) statements of future performance; and (3) statements accompanied by sufficient cautionary language. *Kemp v. Universal Am. Fin. Corp.*, No. 05 Civ. 9883, 2007 U.S. Dist. LEXIS 2162, at * 29-32 (S.D.N.Y. Jan. 10, 2007).

The alleged misrepresentations in the internal research reports, (Compl. ¶¶ 34, 41), are statements of corporate optimism and opinion, which are not actionable under Section 10(b). *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 557 (S.D.N.Y. 2004). The statements are replete with qualifiers like "in our view," "[w]e still view," and "we believe." (Compl. ¶ 34); (Exhs. F-H). These statements are perfect examples of the kind of corporate puffery that cannot form the basis of a securities fraud claim. *See Kemp*, 2007 U.S. Dist. LEXIS 2162, at * 31-32.

Many of the alleged misrepresentations are also statements of future performance, which are "actionable only if 'they are worded as guarantees or are supported by specific statements of fact, or if the speaker does not genuinely or reasonably believe them.'" *In re Bristol-Meyers Squibb Sec. Litig.*, 312 F. Supp. 2d at 557 (quoting *In re IBM Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998)). Community Trust alleges that Merrill Lynch touted ARS as "highly liquid,

safe investments for short-term investing," (Compl. ¶ 32), but fails to aver that the statements were anything other than honestly-held opinions about the future performance of ARS.

Any misstatements are also rendered immaterial under the "bespeaks caution" doctrine. "[U]nder the well-established 'bespeaks caution' doctrine, an alleged misstatement is not actionable where investors were adequately warned of the relevant investment risks." *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976, 2008 U.S. Dist. LEXIS 76670, at * 40 (S.D.N.Y. Sept. 30, 2008) (Preska, J.).[4] Community Trust was repeatedly warned of the risks of investing in the auction market, including the routine practice of submitting support bids. *See supra*, pp. 3-4. These extensive disclosures rendered any misstatements immaterial.

Community Trust attempts to evade the safe harbors and convert these non-actionable statements into material misrepresentations by reciting the legal exceptions to the safe harbors without any factual support for its allegations. (Compl. ¶ 49). This formulaic recitation will not do, and it should be afforded no weight by the Court. *See Twombly*, 127 S. Ct. at 1965.

### B.      Community Trust Has Failed To Sufficiently Plead Scienter.

The PSLRA heightened pleading standard requires the Complaint to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). To satisfy this stringent standard, a plaintiff must allege "facts '(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness.'" *In re Citigroup Auction Rate Sec. Litig.*, 2009 WL 2914370, * 5 (S.D.N.Y. Sept. 11, 2009) (quoting *ASTI*, 493 F.3d at 99). When evaluating whether the facts alleged give rise to a strong inference

---

[4] "The cautionary information need not be in the same document that contains the forward-looking statement, but must instead be reasonably available to investors and affect the total mix of information." *Kemp*, 2007 U.S. Dist. LEXIS 2162, at *30-31.

of scienter, "a court must consider plausible nonculpable explanations for the defendant's conduct." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). "A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

1.    <u>The Non-Fraudulent Inferences Are More Compelling than Any Inference of Scienter.</u>

Far from suggesting the requisite intent, Merrill Lynch's actions refute any inference of scienter. Merrill Lynch expressly disclosed that it "routinely" submitted support bids on its own account to prevent auction failures and to affect the clearing rate, but that investors should not assume that Merrill Lynch would continue to enter support bids or that a successful auction reflected liquidity or low risk. *See supra*, pp. 3-4. This full disclosure by Merrill Lynch negates any inference that Merrill Lynch was acting with an intent to defraud investors regarding its support for the ARS market. *See In re WOW Sec. Litig.*, 35 F.3d 1407, 1425 (9th Cir. 1994) ("detailed risk disclosure[s] negate[] an inference of scienter"); *In re Loral Space & Comm'ns Ltd. Sec. Litig.*, No. 01 Civ. 4388, 2004 WL 376442, at *15 (S.D.N.Y. Feb. 27, 2004).

Additionally, Merrill Lynch's own purchases of ARS preclude an inference of scienter. As the Complaint acknowledges, Merrill Lynch regularly purchased ARS in auctions for its own account. (Compl. ¶ 37). These investments belie any intent to defraud. Because "it would have made no economic sense for defendants to invest literally billions of dollars in a venture that they knew would fail," "[t]hese facts . . . compel the conclusion that defendants did not act with the scienter that is required under the securities laws." *Davidoff v. Farina*, No. 04 Civ. 7617, 2005 WL 2030501, at *11 n.19 (S.D.N.Y. Aug. 22, 2005).

Considering all nonculpable explanations, the compelling inference arises that Merrill Lynch believed ARS to be a sound financial investment for its own accounts and those of its

11

customers. The eventual collapse of the entire ARS market suggests, at most, that Merrill Lynch "engaged in bad (in hindsight) business judgments in connection with ARS." *In re Citigroup*, 2009 WL 2914370, at *6. It is an implausible leap from bad business judgment to fraud.

2. <u>The Mere Receipt of Fees and a General Desire for Profitability Do Not Permit a Compelling Inference of Scienter.</u>

Community Trust unsuccessfully attempts to plead an inference of scienter with conclusory allegations about Merrill Lynch's desire to earn fees and to "perpetuate the auction market and to sell as many auction rate securities as possible." (Compl. ¶¶ 31-32, 58). However, a generalized motive to show or increase profitability is insufficient to allege scienter. *See Kalnit v. Eichler*, 264 F.3d 131, 140 (2d Cir. 2001). Similarly, a "motivation to earn unspecified fees as a basis for inferring scienter" has been routinely rejected. *See In re Citigroup*, 2009 WL 2914370, at *6.

Accepting Community Trust's vague allegations of intent "as adequate . . . would essentially read the scienter element out of existence." *In re Merrill Lynch & Co., Inc. Res. Rpts. Sec. Litig.*, 289 F. Supp. 2d 416, 428 (S.D.N.Y. 2003) (Preska, J.). As this Court has recognized:

> All firms in the securities industry want to increase profits and all individuals are assumed to desire to increase their compensation. Allegations such as these are inadequate to plead motive to commit a fraud on the market or the public under the securities laws and the Reform Act and will not be endorsed by this Court.

*Id.* Based on the scant allegations in the Complaint, a reasonable person could not "deem the inference of scienter cogent and at least as compelling as [the] opposing inference" that Merrill Lynch simply made a poor business decision. *See Tellabs*, 551 U.S. at 324.

**C.   Community Trust Has Failed To Sufficiently Plead Reliance.**

To survive a motion to dismiss, the Complaint must allege reliance or transaction causation. *Lentell*, 396 F.3d at 172. A plaintiff usually satisfies this requirement with an

12

"allegation that but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Id.* However, "[t]he general rule" is that reliance must be <u>reasonable</u>. *Harsco Corp. v. Segui*, 91 F.3d 337, 343 (2d Cir. 1996).

Community Trust attempts to allege that it relied on statements made by Merrill Lynch brokers, (Compl. ¶ 60), but fails to offer any explanation as to the basis or reasonableness of this reliance. The absence of such particularized pleading is best explained by the fact that any reliance on such statements in the face of the extensive disclosures about the auction market would be patently unreasonable. *See In re Citigroup*, 2009 WL 2914370, at *7-8. "An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth." *Starr ex rel. Estate of Sampson v. Georgeson Shareholder, Inc.*, 412 F.3d 103, 109 (2d Cir. 2005). Because Community Trust could have discovered the exact information it now claims was undisclosed simply by reading the provided PPM, the 2006 SEC Order, or the ARS Practices and Procedures, Community Trust cannot establish direct reliance.[5]

The extensive disclosures about the auction market also are fatal to any allegations of presumptive reliance. Community Trust has not, and cannot, take advantage of the fraud-on-the-market presumption of reliance because the Complaint expressly disavows that the ARS market was efficient when it alleges that the ARS market was "an artificial auction market maintained by Merrill Lynch and other broker-dealers." (Compl. ¶ 33(f); 20). When a plaintiff's "own allegations and evidence demonstrate that an efficient market cannot be established" the fraud-on-the-market presumption is not applicable. *In re IPO Sec. Litig.*, 471 F.3d at 42-43. Merrill Lynch's disclosure of its involvement in the ARS market also negates a fraud-on-the-market

---

[5] Community Trust suggests that it relied on internal research reports prepared by Merrill Lynch (Compl. ¶ 34), but the Complaint does not allege that Community Trust ever received or read the reports. Community Trust cannot purport to rely on information it never received or read. *See Adler v. Berg Harmon Assocs.*, 816 F. Supp. 919, 926 (S.D.N.Y. 1993).

theory of reliance: "In a fraud-on-the-market case, an omission is actionable under section 10(b) and Rule 10b-5 only if the [allegedly undisclosed] information has not already entered the market." *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 975 (9th Cir. 1999).

Nor may Community Trust rely on the *Affiliated Ute* presumption, where reliance is presumed if the claim rests on an omission of material fact. *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972). Community Trust's failure to identify an undisclosed material fact forecloses any reliance on the *Affiliated Ute* presumption. Also, many of the allegations cannot properly be characterized as omissions because they are "simply the flip side" of the alleged misstatements. *See Teamsters Local 445 Freight Division Pension Fund v. Bombardier, Inc.*, No. 05 Civ. 1898, 2006 WL 2161887, at *9 (S.D.N.Y. Aug. 1, 2006).

### D.  Community Trust Has Failed To Sufficiently Plead Loss Causation.

"It is long settled that a securities-fraud plaintiff 'must prove . . . loss causation.'" *Lentell*, 396 F.3d at 172. "Loss causation 'is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.'" *Id.* (quoting *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003). To establish loss causation, the loss must have been foreseeable and "caused by the materialization of the concealed risk." *Id.* at 173. For the loss to be foreseeable, "a plaintiff must allege . . . that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Id.* A plaintiff also must properly allege that the "misrepresentation was the cause of the actual loss suffered." *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1495 (2d Cir. 1992).

Community Trust has not plausibly alleged that any economic loss it suffered resulted from the disclosure of misrepresentations by Merrill Lynch. Instead, the Complaint repeatedly alleges that the <u>actual</u> cause of the loss was the decision to stop entering support bids: "Merrill

Lynch and others withdrew from [the ARS] market, the market for auction rate securities collapsed and the auction rate securities sold by Merrill Lynch have become illiquid," (Compl. ¶ 50); "As a direct and proximate result of the withdrawal of such support by the major broker-dealers, including Merrill Lynch, the market for auction rate securities collapsed . . . ," (*id.* ¶ 27); "As a result of the withdrawal of support by all of the major broker-dealers, the market for auction securities collapsed, rendering . . . securities illiquid," (*id.* ¶ 44).

Any loss of liquidity of the ARS is attributable to the marketwide collapse, not any disclosures of fraud. A plaintiff fails to sufficiently plead loss causation when the loss is not attributable to an earlier misrepresentation, but reflects "changed economic circumstances, changed investor expectations, new industry-specific or firm specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Dura Pharm. Inc. v. Broudo*, 544 U.S. 336, 343 (2005). When, as here, the loss "coincides with a marketwide phenomenon causing comparable losses to other investors, . . . a plaintiff's claim fails when 'it has not adequately ple[]d facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events." *Lentell*, 396 F.3d at 174.

Nor do Community Trust's assertions that the alleged misrepresentations "artificially inflated" the price of the securities, (Compl. ¶ 47), "provide the necessary causal link between Merrill's fraud and plaintiffs' losses." *Id.* at 175. As Judge Marrrero recently stated:

> Even if [plaintiff] had alleged that the … auction rate securities were not worth the price [it] paid for them because of the facts that [defendant] allegedly failed to disclose or misrepresented, [plaintiff] would still need to show some causal connection between the alleged misrepresentations and omissions and the loss.

*Healthcare Fin. Group, Inc. v. Bank Leumi USA*, No. 08 Civ. 11260, 2009 WL 3631036, at * 5 (S.D.N.Y. Oct. 26, 2009). Community Trust's similar failure to sufficiently allege that any

misrepresentation by Merrill Lynch, rather than the decision to stop entering support bids and the collapse of the market, caused its loss is fatal to its disclosure claim.

## II.   THE COMPLAINT FAILS TO STATE A MARKET MANIPULATION CLAIM.

"Market manipulation requires . . . (1) manipulative acts; (2) damage (3) caused by reliance on an assumption of an efficient market free of manipulation; (4) scienter; (5) in connection with the purchase or sale of securities; (6) furthered by the defendant's use of the mails or any facility of a national securities exchange." *ATSI*, 493 F.3d at 101. Community Trust has not pleaded a claim for market manipulation with the requisite specificity. Rule 9(b) requires plaintiffs to aver "specific allegations as to which Defendants performed what manipulative acts at what times and with what effect." *In re Citigroup*, 2009 WL 2914370, at * 5. Community Trust's vague references to "fraudulent and manipulative practices" and an artificial market, (Compl. ¶¶ 19, 20, 23, 33), are insufficient to allege market manipulation. *See id.* Moreover, Merrill Lynch's extensive disclosures are fatal to any claim of market manipulation.

### A.   Community Trust Has Failed To Plead Fraudulent Intent or Loss Causation.

For the same reasons Community Trust's misrepresentation claim should be dismissed for failing to plead particularized facts giving rise to a strong inference of fraudulent intent or failing to plead that the economic loss was caused by fraudulent actions, Community Trust's market manipulation claim likewise should be dismissed. *See supra* pp. 10-12, 14-16.

### B.   Community Trust Has Failed To Identify Any Manipulative Acts.

Market manipulation requires a **manipulative or deceptive act** that is **prohibited**, "such as wash sales, matched orders, or rigged prices." *See Santa Fe Indus., Inc. v. Green*, 97 S. Ct. 1292, 1301-02 (1977). Community Trust does not, and cannot, identify any prohibited conduct by Merrill Lynch. In fact, the only conduct that Community Trust does identify – the submission

of support bids – is **completely legal** and permitted by the SEC. (Exh. B). Practices that are permitted by the SEC cannot form the basis of a market manipulation claim.

Not only are Merrill Lynch's auction policies lawful activities, they were fully disclosed to Community Trust, other investors, and the ARS market in general. While a market manipulation claim is premised on "the fact that investors are misled to believe 'that prices at which they purchase and sell securities are determined by the natural interplay of supply and demand, not rigged by manipulators,'" *ATSI*, 493 F.3d at 100, full disclosure of the conduct in question is fatal to a claim of market manipulation. *Santa Fe*, 97 S. Ct. at 1303.  In addition to repeatedly informing Community Trust about the practice of placing support bids, Merrill Lynch warned Community Trust of the **exact** risk that befell it: "[A]uction failures are possible, especially if the issuer's credit were to deteriorate, if a market disruption were to occur or if, for any reason, Merrill Lynch were unable or unwilling to bid." (Exh. D at 18). Community Trust's claim of market manipulation evaporates in the light of these disclosures.

### C.    Community Trust Has Failed To Plead Reliance.

Reasonable reliance "on an (ultimately incorrect) assumption of an efficient market free of manipulation" is a necessary element of market manipulation. *In re Citigroup*, 2009 WL 2914370, * 6. Disclosure, however, precludes a finding of reliance. Recently, Judge Swain concluded that disclosures about the ARS market that were nearly identical to those received by Community Trust from Merrill Lynch were fatal to a market manipulation claim. *Id.* at *7 (emphasis added) (citation omitted). As in *In re Citigroup*, Merrill Lynch's extensive disclosures are "fatal to [its] claim for market manipulation." *Id.*[6]

---

[6] Community Trust is also unable to rely on the theory of fraud-on-the-market in the context of a claim for market manipulation for the same reasons the theory is unavailable in its claim of misrepresentation. *See supra*, pp. 13-14.

III.     **COMMUNITY TRUST'S SECURITIES CLAIMS ARE TIME-BARRED.**

"[T]he statute of limitations period applicable to section 10(b) and Rule 10b-5 [is] the earlier of '(1) two years after the discovery of the facts constituting the violation; or (2) 5 years after such violation.'" *In re GlaxoSmithkline PLC*, No. 05 Civ. 3751, 2006 WL 2871968, at * 7 (S.D.N.Y. Oct. 6, 2006). The limitations period begins upon inquiry notice: "when circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded." *LC Cap. Partners, LP v. Frontier Ins. Group Inc.*, 318 F.3d 148, 154 (2d Cir. 2003). When inquiry notice is apparent from the complaint and papers "integral to the complaint," the court "can readily resolve the issue on a motion to dismiss." *Lentell*, 396 F.3d at 168.

As early as 2004, information about the practice of submitting support bids in ARS auctions was publicly available. (Exhs. E-J). The May 2006 SEC Order, which was released to the public, further disclosed the role brokers played in affecting the auction market. (Exh. B). Additionally, the January 2006 PPM expressly put Community Trust on notice of Merrill Lynch's role in the ARS market, the possibility of illiquidity and risk of auction failures. (Exh. A). In August 2006, Merrill Lynch again put Community Trust on inquiry notice when it publicly released the ARS Practices and Procedures. (Compl. ¶ 37) (Exh. D).

All of the information about which Community Trust now complains was available to the general public, investors, and Community Trust by August 2006, more than two years before Community Trust filed this action on December 31, 2008. (PACER Doc. No. 1). Because Community Trust was on inquiry notice by August 2006, at the latest, Community Trust's federal claims are barred by the 2-year statute of limitations.

IV.     **THE COMPLAINT FAILS TO STATE A CLAIM UNDER STATE LAW.**

   A.     **Community Trust's Claim Under the Kentucky Securities Law Fails.**

The Kentucky statutory provisions are "virtually identical" to Section 10(b) and Rule 10b-5 and have the same basic elements. *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 916-17 (6th Cir. 2007); K.S.R §§ 292.320, 292.480(1). Community Trust's failure to sufficiently plead a federal securities claim is fatal to its identical claim under state law.

**B.     Community Trust's Claim of Common Law Fraud and Deceit Fails.**

 "In a Kentucky action for fraud, the party claiming harm must establish six elements of fraud . . . : a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *UPS v. Rickert*, 996 S.W.2d 464, 468 (Ky. 1999). Because Community Trust has not sufficiently alleged the common elements of misrepresentation, scienter, and reliance, the common law fraud claim is fatally deficient. *See supra*, pp. 6-14.

**C.     Community Trust's Claim For Breach of Fiduciary Duty Fails.**

Community Trust's claim of breach of fiduciary duty also is meritless. In an ordinary business relationship, a broker-dealer does not owe a fiduciary duty to the purchaser of securities in a non-discretionary account. *United States v. Santoro*, 302 F.3d 76, 80 (2d Cir. 2002); *de Kwiatkowski v. Bear, Stearns & Co., Inc.*, 306 F.3d 1293, 1302-03 (2d Cir. 2002) (collecting authorities). Community Trust's attempts to convert a garden variety broker-customer relationship into a fiduciary relationship are conclusory allegations that cannot sustain a claim. Moreover, for the same reasons Community Trust cannot sustain its fraud-based claims, including the extensive ARS disclosures, it cannot maintain a claim for breach of fiduciary duty.

**D.     Community Trust's Claim for Negligent Misrepresentation Fails.**

Because negligent misrepresentation requires both a misrepresentation or omission by Merrill Lynch and justifiable reliance by Community Trust, Community Trust's failure to allege

sufficiently those elements under its federal securities claim is equally fatal to this common law claim. *See Presnell Const. Managers, Inc. v. EH Const., LLC*, 134 S.W.3d 575, 580-83 (Ky. 2004). *See supra*, pp. 6-10, 12-14.

      **E.**     **Community Trust's Claim for Breach of Implied Covenant of Good Faith and Fair Dealing Fails.**

"The duties of good faith and fair dealing arise from a contractual obligation and, in the absence of such contract, no duties exist under Kentucky law." *Grisby v. UPS Ground Freight, Inc.*, No. 2007-CA-002401-MR, 2009 WL 1636293, at * 3 (Ky. June 12, 2009). Community Trust mentions the "longstanding relationship between Community Trust and Merrill Lynch and the contractual arrangements between them," (Compl. ¶ 109), but this opaque reference is insufficient to allege the existence of a contract. In the absence of such a contract, Merrill Lynch has no duty and this claim is due to be dismissed.

**CONCLUSION**

For the reasons set forth above, Merrill Lynch respectfully requests that the Court dismiss the Complaint in its entirety and with prejudice.

Dated:         November 18, 2009

                                   Respectfully submitted,

                                 ___s/ Carl S. Burkhalter_____

                                 A. Inge Selden III
                                 Carl S. Burkhalter
                                 MAYNARD, COOPER & GALE, P.C.
                                 1901 Sixth Avenue North
                                 2400 Regions Harbert Plaza
                                 Birmingham, Alabama 35203
                                 (205)254-1000

                                 Attorneys for Defendant