UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re MERRILL LYNCH AUCTION RATE SECURITIES LITIGATION | **Master Case File<br>No. 09-md-2030 (LAP)** |
| This Document Relates To<br><br>No. 08-CV-3037 (LAP) | |

**SURREPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS LEAD PLAINTIFFS' FIRST AMENDED
CONSOLIDATED CLASS ACTION COMPLAINT**

Daniel C. Girard (admitted *pro hac vice*)
Aaron M. Sheanin (admitted *pro hac vice*)
Christina H. C. Sharp (admitted *pro hac vice*)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, CA 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Jonathan K. Levine (JL-8390)
**GIRARD GIBBS LLP**
711 Third Avenue, 20th Floor
New York, NY 10017
Telephone: (212) 867-1721
Facsimile: (212) 867-1767

Plaintiffs' Lead Counsel

**INTRODUCTION**

Plaintiffs respectfully submit this surreply to address the decision in *In re Citigroup Auction Rate Securities Litigation*, No. 08 Civ. 3095 (LTS)(FM), 2009 U.S. Dist. LEXIS 83046 (S.D.N.Y. Sep. 11, 2009). *Citigroup* was issued after Plaintiffs filed their opposition to Defendants' motion to dismiss, and Defendants rely heavily on that decision in their reply.

**ARGUMENT**

I.   *Citigroup* **Fails To Support Defendants' Argument That Plaintiffs' Allegations Of Manipulative Conduct Are Insufficient**

Defendants cite *Citigroup* for the proposition that Merrill's disclosures preclude a claim for manipulation. (Defs.' Reply at 10-11.) *Citigroup* does not support Defendants' argument, however. The *Citigroup* court did not discuss the sufficiency of the defendants' disclosures in analyzing the element of manipulative conduct. Rather, the court concluded that the plaintiff had not alleged manipulation with particularity under Rule 9(b). *See Citigroup*, 2009 U.S. Dist. LEXIS 83046, at *16 (citing *ATSI Communc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 102 (2d Cir. 2007)). The court held that the plaintiff had not made "specific allegations as to which Defendants performed what manipulative acts at what times and with what effect." *Id.* at *17.

Unlike *Citigroup*, the Merrill Defendants do not argue that Plaintiffs' allegations of market manipulation are insufficiently particularized. Nor could they. As to what manipulative acts were performed, by whom, and when, Plaintiffs allege that "Merrill followed a uniform policy of placing support bids if needed to prevent auction failures in every auction for which it was sole or lead auction dealer" between March 2003 and August 2007. (¶ 46.) Merrill intervened in more than 5,800 auctions since 2006. (¶ 47.) As to the effect of the manipulation, the Complaint states that the support bids "created the outward appearance that ML ARS were readily liquid investments and that the auction market functioned by the natural interplay of supply and demand" and "masked the liquidity risks inherent in ML ARS." (¶¶ 49-50.)

The Complaint identifies Merrill executives responsible for various aspects of the scheme including: Frances Constable, the Managing Director in charge of Merrill's ARS Trading Desk;

1

John Price, Constable's supervisor and the Head of Americas Sales Credit and Trading at Merrill; Kevin Conery and Martin Mauro, analysts in Merrill's Research Department; as well as other senior traders and risk management executives.  (¶¶ 68-69, 85, 138-39.)  These detailed allegations of Merrill's manipulative conduct provide the requisite specificity found lacking in *Citigroup*.  Accordingly, the *Citigroup* decision does not support Defendants' contention that their disclosures provide a defense to Plaintiffs' allegations of manipulative conduct.[1]

## II.     *Citigroup* Fails To Support Defendants' Argument That Plaintiffs Have Not Alleged Facts Supporting A Strong Inference Of Scienter

*Citigroup* rejected the plaintiffs' scienter allegations, holding that:  (1) allegations of motive "to offset subprime market losses and to obtain fees for services in connection with the auctions" were insufficient and too generalized; (2) the plaintiff "failed to allege particularized facts giving rise to a strong inference of scienter based on circumstantial evidence of conscious misbehavior or recklessness"; and (3) the "subprime crisis" gave rise to "an opposing and compelling inference that Defendants only engaged in bad (in hindsight) business judgments in connection with ARS, and did not engage in the alleged conduct with an intent to deceive."  *Citigroup*, 2009 U.S. Dist. LEXIS 83046, at *18-21.  Relying on *Citigroup*, Defendants contend that Plaintiffs' scienter allegations here are similarly lacking. (Def. Reply at 21-22.)

*Citigroup* is distinguishable.  First, the Complaint alleges motives not asserted in *Citigroup*.  Merrill sought to dump its inventory on unsuspecting investors, thereby reducing its exposure to assets it knew were likely to become illiquid.  (¶¶ 129-34, 194.)  Merrill also was motivated to manipulate interest rates to placate Merrill's issuer clients, including its own affiliate BlackRock, Inc., and thereby obtain lucrative future business from those issuers.  (¶¶ 59-64, 117-21.)  Plaintiffs do not allege Merrill's mere desire "to earn unspecified fees." *Citigroup*, 2009 U.S. Dist. LEXIS 83046 at *19.  Rather, Plaintiffs allege that Merrill obtained nearly $80 million in annual revenues from its dual roles as an underwriter and an auction dealer for ML

---

[1] Plaintiffs' memorandum in opposition to Defendants' motion to dismiss explains why Merrill's disclosures were in any event inadequate. (Opp. Mem. at 17-25.)

2

ARS. (¶¶ 108-13.) The $400 million Merrill earned during the Class Period exceeded the $375 million charge Merrill Lynch recorded in connection with the regulatory settlement. (¶ 167.)

Second, unlike *Citigroup*, the Complaint here quotes internal emails demonstrating that Merrill intended to and did manipulate the ML ARS market. As Merrill's inventory expanded, Price directed Constable and the ARS Trading Desk "to get smaller unfortunately – using any means possible." (¶ 132.) Constable acknowledged that the ARS Trading Desk was "shoveling as fast as we can" to reduce inventory. (¶ 131.) To attract new buyers, Merrill manipulated the clearing rate higher. As Constable explained, "[w]e are working it higher….The gloves are off and we are not concerned with issuer perception of our abilities and the competition. Gotta move these microwave ovens!!" (¶ 62.) Merrill continued its manipulative scheme ("we HAVE TO SELL INVENTORY"), even as executives contemplated "Fail[ing] future auctions" as an "Option[] to Reduce the Risk" and believed that issuers "would be best served [by] exiting the market." (¶¶ 138, 140, 142; *see generally* ¶¶ 135-47.) These and other allegations give rise to a strong inference that Merrill defrauded investors knowingly or at a minimum recklessly.

Third, unlike *Citigroup*, Defendant's suggestion that ML ARS investors were harmed solely as a result of the credit crisis is untenable. Plaintiffs allege that Merrill manipulated the market for ML ARS beginning in 2003. The scheme did not become deceptive merely because Merrill stopped supporting the auctions once the credit markets started to tighten. *Citigroup*, 2009 U.S. Dist. LEXIS 83046, at *2-3, is of no benefit to Defendants, as the class period in that case did not begin until August 1, 2007, at the onset of the credit crisis. Moreover, unlike *Citigroup*, Merrill's internal communications reveal its intent to dump inventory on investors and then pull the plug on the scheme when it became clear that the collapse of the market was, in Constable's well-chosen words, a "fait accompli." (¶ 104.) Plaintiffs' cogent inference of scienter is more compelling than Defendants' proposed inference of non-fraudulent intent. Even if these competing inferences were given equal weight, however, a tie would favor Plaintiffs. (Opp. Mem. at 26 (citing *In re Amaranth Natural Gas Commodities Litig.*, 587 F. Supp. 2d 513, 543 n.199 (S.D.N.Y. 2008); *accord Lormand v. US Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir.

2009); *ACA Fin. Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 59 (1st Cir. 2008).)

### III. *Citigroup* Fails To Support Defendants' Argument That Plaintiffs' Reliance Was Unreasonable

Defendants likewise cite *Citigroup* to argue that "publicly available" information about Merrill's auction rate conduct rendered Plaintiffs' reliance unreasonable. (Defs.' Reply at 18.) Again, *Citigroup* is distinguishable. As an initial matter, the court relied heavily on the fact that the *Citigroup* "Plaintiff has specifically disclaimed any invocation of the 'fraud-on-the-market' approach." *Citigroup*, 2009 U.S. Dist. LEXIS 83046 at *22. Here, Plaintiffs do not concede market inefficiency and, as Defendants concede (Defs.' Reply at 19 n.14), the allegations support a fraud-on-the-market. Plaintiffs allege that material news had a prompt and immediate effect on the price of ML ARS, as evidenced by the significant price changes following Merrill's publication of research reports and the collapse of the market once Merrill stopped bidding. (¶ 162.) This cause-and-effect relationship is "the essence of an efficient market and the foundation for the fraud on the market theory." *Teamsters Local 445 v. Bombardier Inc.*, 546 F.3d 196, 207 (2d Cir. 2008) (quoting *Cammer v. Bloom*, 711 F. Supp. 1264, 1287 (D.N.J. 1989)).[2]

Next, the court concluded that the *Citigroup* plaintiff's allegations of reliance on the integrity of the market were not reasonable in light of the disclosures that the defendants provided to him. A crucial distinction, however, is that the plaintiff bought his securities directly from a Citigroup entity and received trade confirmations referring him to a website describing Citigroup's auction rate procedures. *See id.* at *10. In light of these references, the *Citigroup* court found the plaintiff's allegations of reliance to be unreasonable. *See id.* at *8, 10-11, 23-24.

Plaintiffs here, by contrast, bought ML ARS not from Merrill itself, but from E*Trade and Wells Fargo. (¶¶ 11-13.) As Defendants tacitly concede, Plaintiffs did not receive trade confirmations, prospectuses, or any other documents disclosing Merrill's auction rate practices or referring Plaintiffs to Merrill's website. (Defs.' Reply at 11-12.) Thus, *Citigroup* does not

---

[2] Plaintiffs also allege other indicia of an efficient market including that ML ARS were held by all classes of investors and that Merrill published research reports on ML ARS throughout the Class Period.

4

apply.  Defendants counter this point with a curious argument:  Merrill had no duty to give downstream buyers such as Plaintiffs any information at all; its disclosures were designed for its own customers only, and therefore Plaintiffs cannot complain that Merrill's disclosures were inadequate.  (*Id.* at 12 & n.11.)  But this argument cannot be reconciled with Merrill's duties of disclosure as an underwriter of ML ARS and as a market manipulator.  *See SEC v. Tambone*, 550 F.3d 106, 134-35 (1st Cir. 2008), *rehearing, en banc, granted* 2009 U.S. App. LEXIS 16219 (1st Cir. July 22, 2009); *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 381-82 (S.D.N.Y. 2003).  By admitting that the disclosures were intended only for investors who bought ML ARS directly from Merrill, Defendants concede those statements were of no value to anyone else.

Finally, the *Citigroup* court held that the complaint failed to include "specific allegations of the basis for Plaintiff's incorrect assumptions about the ARS market and the reasonableness of the alleged reliance in the face of [the defendants'] disclosure."  *Citigroup*, 2009 U.S. Dist. LEXIS 83046 at *25.  Plaintiffs here make just such allegations.  Plaintiffs allege that the SEC found Merrill's disclosures to be incomplete and misleading.  (¶¶ 175-80.)  According to the SEC, Merrill "did not make adequate disclosures that the liquidity of the securities was based on Merrill Lynch supporting the auctions it managed when there was not enough demand."  (¶ 177.)  *Citigroup* did not address the SEC's findings as to the adequacy of Citigroup's disclosures.

Plaintiffs also allege that Merrill concealed its manipulative conduct at every possible turn.  Merrill's research reports touting the durability and longevity of auction rate securities, and stated just before Merrill withdrew its support for the ML ARS market that the auctions "[h]ardly ever" failed.  (¶¶ 157-60.)  Merrill also concealed that it needed to reduce its own ML ARS exposure, and manipulated clearing rates because Merrill executives believed that allowing those rates to be set at legitimate auctions "would be too scary."  (¶¶ 43, 61-62, 90, 129-34.)  Thus, Merrill worked tirelessly to convince investors that ML ARS traded at arm's length in genuine auctions.  (¶¶ 163-69; *see also* Pls.' Oppo. at 34.)  Unlike in *Citigroup*, Plaintiffs' assumption that ML ARS traded in an efficient market free of manipulation was therefore reasonable.

The *Citigroup* court did not consider whether reliance is even necessary where, as here,

5

the defendants are alleged to have engaged in a comprehensive scheme to manipulate the market and made collateral omissions and misrepresentations in furtherance of the scheme. *See Competitive Assocs., Inc. v. Laventhol, Krekstein, Horwath & Horwath*, 516 F.2d 811, 814 (2d Cir. 1975); *Schlick v. Penn-Dixie Cement Corp.*, 507 F.2d 374, 381 (2d Cir. 1974); *Dietrich v. Bauer*, 76 F. Supp. 2d 312, 342 (S.D.N.Y. 1999). Nor did the court consider whether reliance may be presumed under *Affiliated Ute Citizens v. U.S.*, 406 U.S. 128, 153-54 (1972), as the defendants failed to disclose material facts, including their systemic interventions in the auctions to prevent failures and that without those interventions, the auction market would collapse.

*Citigroup* also appears to be internally inconsistent. The court first concluded that the plaintiffs' allegations of manipulative conduct were insufficiently particularized. 2009 U.S. Dist. LEXIS 83046 at *17. The court then rejected the plaintiff's reliance allegations on the ground that the defendants' submissions had disclosed "the very conduct of which Plaintiff complains." *Id.* at *24. So the court held on one hand that manipulation had not been alleged with enough precision *and* on the other that the claim was barred because the public knew all about the manipulation, without attempting to reconcile the contradiction or the SEC's findings of inadequate disclosure. *Citigroup* also leaves unanswered the question why, if the facts were fully disclosed, thousands of investors, including corporate treasurers for many of the largest corporations in the country, would have chosen to invest in a rigged market.

## CONCLUSION

For the foregoing reasons and those set forth in their Memorandum Of Law In Opposition To Defendants' Motion To Dismiss Lead Plaintiffs' First Amended Consolidated Class Action Complaint, Plaintiffs respectfully request that the Court deny Defendants' motion to dismiss.

Dated: November 23, 2009                     Respectfully submitted,

                                             **GIRARD GIBBS LLP**

                                             By:      */s/ Aaron M. Sheanin*

                                             Daniel C. Girard (admitted *pro hac vice*)

6

        Aaron M. Sheanin (admitted *pro hac vice*)
        Christina H. C. Sharp (admitted *pro hac vice*)
        601 California Street, 14th Floor
        San Francisco, CA 94108
        Telephone:  (415) 981-4800
        Facsimile:  (415) 981-4846

        Jonathan K. Levine (JL-8390)
        **GIRARD GIBBS LLP**
        711 Third Avenue, 20th Floor
        New York, NY 10017
        Telephone:  (212) 867-1721
        Facsimile:  (212) 867-1767

        **Plaintiffs' Lead Counsel**

**Additional Counsel:**

Norman E. Siegel
Matthew L. Dameron
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Telephone:  (816) 714-7100
Facsimile:  (816) 714-7101

Christopher A. Seeger (CS-4880)
Stephen A. Weiss (SW-3520)
David R. Buchanan (DB-6368)
**SEEGER WEISS LLP**
One William Street
New York, NY 10004
Telephone:  (212) 584-0700
Facsimile:  (212) 584-0799

**CERTIFICATE OF SERVICE**

  I, Aaron M. Sheanin, hereby certify that on November 23, 2009, I caused the following document(s) to be filed electronically with the United States District Court for the Southern District of New York through the Court's mandated ECF service:

**SURREPLY MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFFS' FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

  Counsel of record are required by the Court to be registered e-filers, and as such are automatically e-served with a copy of the document(s) upon confirmation of e-filing.

  I declare under penalty of perjury that the foregoing is true and correct.

  Executed this 23rd day of November, 2009 at San Francisco, California.

                      */S/ Aaron M. Sheanin*