# Fishman Haygood Phelps
# Walmsley Willis & Swanson, L.L.P.

201 St. Charles Avenue
46th Floor
New Orleans, Louisiana 70170-4600
(504) 586-5252
Fax (504) 586-5250

James R. Swanson
Partner
(504) 586-5267 Direct
jswanson@fishmanhaygood.com

April 29, 2010

File No.: 1303-32

**VIA ECF**

Honorable Loretta A. Preska
United States District Court
Southern District of New York
500 Pearl Street, Room 1320
New York, NY 10007

      Re:    Case Nos. 09-cv-5404 and 09-cv-6770
                *In re Merrill Lynch & Co., Inc. Auction Rate Securities (ARS)*
                *Marketing Litigation,* Case No. 09-MDL-2030 (S.D.N.Y.)

Dear Chief Judge Preska:

    I represent the Louisiana Stadium & Exposition District and the State of Louisiana (collectively, "LSED") in the above-captioned litigation. I write regarding the opinion issued Tuesday by the Supreme Court in *Merck & Co. v. Reynolds*, No. 08-905, slip op. (U.S. April 27, 2010).[1] In *Merck*, the Supreme Court makes three holdings:

(1)    The two-year limitations period for claims under Section 10(b) "accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation' — whichever comes first." *Merck,* slip op. at 8-12.

(2)    In determining the time at which "discovery" occurs, inquiry notice and storm warnings are not sufficient. *Id.,* slip op. at 14-17.

(3)    "The facts constituting the violation" of which the plaintiff must either have actual or constructive knowledge include facts showing that the defendant acted with scienter (*i.e.,* "a mental state embracing intent to deceive, manipulate, or defraud"). *Id.,* slip op. at 13.

---

[1] In footnote 131 of its Opposition to Merrill Lynch's Motion for Judgment on the Pleadings, LSED noted the potential significance of this case, then under consideration.

314934v.2

April 29, 2010
Page 2

The first holding — and the only holding to which Merrill Lynch's letter of April 27, 2010 refers — is not particularly momentous; the opinion itself emphasizes that the courts of appeals, and even the parties themselves, unanimously agree that "discovery" may be either *actual* or *constructive*.[2]

Merrill Lynch's letter omits any discussion of the second and third holdings. LSED submits that these two holdings are relevant to Merrill Lynch's Motion for Judgment on the Pleadings, and more specifically, Merrill Lynch's argument that LSED's federal securities fraud claims are time-barred.

The Supreme Court's holding on "inquiry notice" and "storm warnings" is significant. In its Motion, Merrill Lynch argued that disclosures made in 2006 that Merrill Lynch "may routinely place one or more bids on an auction for its own account" constituted "storm warnings" and/or "inquiry notice." Even assuming the 2006 disclosures on which Merrill Lynch relies had the required specificity to constitute "storm warnings,"[3] and that LSED had at that time suffered damage such that their cause of action had accrued,[4] the Supreme Court in *Merck* makes clear that inquiry notice or storm warnings are not sufficient to start the running of prescription. The Supreme Court states:

> If the term "inquiry notice" refers to the point where the facts would lead a reasonably diligent plaintiff to investigate further, that point is not necessarily the point at which the plaintiff would have already discovered facts showing scienter or other "facts constituting the violation." But the statute says that the plaintiff's claim accrues only after the "discovery" of those latter facts. Nothing in the text [of 28 U.S.C. §1658(b)(1)] suggests that the limitations period can sometimes begin *before* "discovery" can take place.

\* \* \*

> "[T]erms such as "inquiry notice" and "storm warnings" may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating. *But the limitations period does not begin to run until the plaintiff thereafter discovers or reasonably* diligent *plaintiff would have discovered "the facts constituting the violation," including scienter— irrespective of whether the actual plaintiff undertook a reasonably diligent investigation."*

Slip op. at 15, 17 (emphasis added).

As a result, Merrill Lynch must demonstrate that, armed with the 2006 disclosures, a reasonably diligent plaintiff could have discovered the "facts constituting the violation" more

---

[2] It is worth note, however, that Justices Scalia and Thomas opined that only actual notice is sufficient to trigger the two-year statute of limitations period contained in 28 U.S.C. § 1658(b)(1).
[3] *See* discussion in LSED's Opposition at pp. 46-49 regarding the specificity required to constitute "inquiry notice."
[4] *See* discussion in LSED's Opposition at pp. 50, 42-44 regarding the necessity of sustaining damage (which occurred in this case in 2008) for a cause of action to accrue.

than two years before the date suit was filed.  Here, those facts are *not* that Merrill Lynch might bid in auctions from time to time, but that Merrill Lynch was bidding in *every* auction, and that at the time it recommended the ARS structure to LSED, it knew (but failed to disclose) that LSED's auctions were certain to fail unless Merrill Lynch submitted blanket bids at every auction.  Even if LSED had embarked on an "investigation" following the 2006 disclosures, LSED could never have discovered these facts.  Nor could LSED have discovered Merrill Lynch's pervasive practice of submitting support bids in every auction for which it was the lead broker.  Nor could it have discovered that during the 30-month period from January 3, 2006, to May 27, 2008, 5,892 auctions would have failed but for Merrill Lynch's support bids — a fact which LSED discovered only after the Massachusetts Securities Division released records collected over the course of an investigation of Merrill Lynch that culminated in the consent order entered on April 9, 2009.  Indeed, even after LSED inquired into the cause of auction failures in 2008, Merrill Lynch failed to disclose that the ARS market was wholly dependent on its support bids; instead, it falsely told LSED that the failures were caused by "market disruptions."

In sum, Merrill Lynch's disclosure that it "may routinely place one or more bids in an auction for its own account" is no more specific than the FDA's warning letter or the lawsuits' complaints in *Merck*, the contents of which the Supreme Court held too general to support constructive discovery.[5]

With respect to scienter, LSED has alleged that a strong inference of scienter can be inferred from: (1) the ubiquity of Merrill Lynch's long-standing and widespread practice of placing blanket support bids (which made it clear to Merrill Lynch that its continued support was essential to the viability of the ARS market); (2) the obvious materiality of the undisclosed facts regarding its support bid practice; (3) the pervasiveness of Merrill Lynch's concealment that the ARS market's viability depended on its support bids; and (4) the large compensation Merrill Lynch stood to gain by perpetuating the auction system.[6]  Under the Supreme Court's holding in *Merck*, these facts are part of the "facts giving rise to the violation" that either must be known or that "a reasonably diligent plaintiff would have known." Slip op. at 12.  The 2006 disclosures cited by Merrill Lynch do not disclose any of the facts underlying LSED's scienter allegations.

I therefore submit that the Supreme Court's opinion *Merck* supports that LSED's federal securities' claims, like the claims of the plaintiffs in *Merck*, are timely.  If additional briefing will assist the Court, I welcome the opportunity to more fully address the impact *Merck* has on the underlying action.

---

[5] Merck argued that the plaintiffs in that case had constructive discovery of "the facts constituting the violation" prior to November 6, 2001, pointing specifically to (1) a September 2001 warning letter from the FDA which alleged that Merck had failed to sufficiently publicize studies that suggested Merck's product was harmful and (2) lawsuits filed by investors in September and October 2001 which alleged that Merck purposefully downplayed the risks associated with its product.  But the Supreme Court held that neither of those two circumstances — whether viewed separately or together — constituted constructive discovery.  Slip op. at 18-19.

[6] Complaint ¶¶ 243-46; LSED Opposition Memo at pp. 24-30.

314934v.2

April 29, 2010
Page 4

                              Respectfully,

                              */s/ James R. Swanson*

                              James R. Swanson

JRS:alm

cc:     All counsel of record

314934v.2