KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3209

(202) 326-7900

FACSIMILE:
(202) 326-7999

May 4, 2010

**VIA ECF**
Honorable Loretta A. Preska
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

    Re:    *Teva Pharm. Indus. Ltd., et al. v. Merrill Lynch & Co., Inc., et al.*,
           No. 09-CV-6936-LAP
           *In re Merrill Lynch & Co., Inc. Auction Rate Sec. (ARS) Mktg. Litig.*,
           No. 1:09-md-2030-LAP

Dear Chief Judge Preska:

      We represent Plaintiffs Teva Pharmaceutical Industries Ltd., Teva Pharmaceutical Works Private Limited Company, and Teva Pharmaceuticals Curacao NV (collectively, "Teva") in the above captioned case and write to inform the Court that on April 27, 2010, the United States Supreme Court issued an opinion that resolved a circuit split regarding when a private cause of action under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), accrues. *See Merck & Co. v. Reynolds*, No. 08-905, slip op. (U.S. Apr. 27, 2010). A copy of the decision is enclosed.

      In *Merck*, the Supreme Court rejected what had been the standard in the Second Circuit that the two-year statute of limitations period for claims under Section 10(b) began to run when a plaintiff became aware of information that amounted to "storm warnings" of fraud, or placed plaintiffs on "inquiry notice" of fraud, even if the plaintiff had not at that time discovered the fraud itself. *Merck* slip op. at 7, 17 (internal quotation marks omitted). After *Merck*, "the 'discovery' of facts that put a plaintiff on 'inquiry notice' does not automatically begin the running of the limitations period." *Id.* at 17.

      Instead, the Supreme Court held that a Section 10(b) cause of action "accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation' – whichever comes first." *Id.* at 1. The Court also held that "the facts constituting the violation" include facts establishing the defendant's scienter, "a mental state embracing intent to deceive, manipulate, or defraud." *Id.* (internal quotation marks omitted). Thus, the Court determined that the statute of limitations on plaintiffs' Section 10(b) claim, which alleged that Merck had fraudulently withheld information about the

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.
Honorable Loretta A. Preska
May 4, 2010
Page 2

risks associated with its drug Vioxx, did not begin to run either when the Food and Drug Administration issued a warning letter stating that Merck had "minimized" the potentially serious risks associated with Vioxx or when two civil products liability actions were filed alleging that Merck "purposefully downplayed and/or understated the serious nature of the risks associated with Vioxx." *Id.* at 18 (internal quotation marks omitted). Even if the public had been made aware of some facts suggesting that Merck's statements may have been false or misleading, the Court explained, neither the warning letter nor the complaints provided "discovery" of scienter-related facts indicating that Merck knew that Vioxx increased certain cardiovascular risks. *See id.* at 18-19.

In the present case, Merrill Lynch & Co., Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch"), and Merrill Lynch International (collectively, "Defendants") moved to dismiss Teva's First Amended Complaint ("FAC") arguing, among other things, that the statute of limitations had expired more than two years before Teva brought suit. Relying on Second Circuit precedent that the Supreme Court rejected in its *Merck* decision (*see* Mot. at 31-32 (DN 25)), Defendants asserted that "[a]s early as 2004, information about the practice of submitting support bids in ARS auctions was publicly available." *Id.* at 32. Other events occurring in 2006, Defendants claimed, "put Teva on inquiry notice" of its conduct. *Id.* Defendants additionally argued that it lacked any intent to defraud. *See id.* at 19-22.

The *Merck* decision specifically forecloses Defendants' arguments concerning the timeliness of Teva's claims. Given the anonymous nature of the Dutch auction process, Teva did not know and could not reasonably have discovered the facts constituting Merrill Lynch's violations of Section 10(b) – including the fact that Merrill Lynch placed support bids in *every* auction in which it served as broker-dealer and for the *full* amount of the securities up for auction – before August 5, 2007, two years before Teva brought suit. Nor could any investor have discovered that Merrill Lynch had no legitimate investment interest in acquiring any of the securities it purchased at auction, and that Merrill Lynch routinely attempted to sell any of the securities it had acquired. Indeed, the nature and extent of Merrill Lynch's bidding practices did not become known until after securities regulators subpoenaed Merrill Lynch's trading records and then publicized their findings in the numerous enforcement actions brought against Merrill Lynch beginning in August 2008. *See* FAC ¶¶ 63-65 (DN 12). Because private investors such as Teva lacked the subpoena power that securities regulators utilized to uncover and eventually publicize these critical facts, those private plaintiffs could not have discovered these facts constituting the violation.

Teva also did not know about the more general lack of market demand for the collateralized debt obligation ("CDO") notes underwritten by Merrill Lynch, nor did any disclosure place Teva on inquiry notice of facts that could and should have led it to discover such lack of demand. As detailed in the FAC, Merrill Lynch took tens of billions of dollars of CDO notes into its inventory – including both CDO notes it acquired at auction and CDO notes for which it was unable to find a buyer – in order to permit its CDOs to issue, and thereby to permit Merrill Lynch to earn hundreds of millions of dollars in underwriting fees. *See id.* ¶ 29. Because Merrill Lynch concealed the extent of its CDO holdings from the investing public, Teva did not

KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

Honorable Loretta A. Preska
May 4, 2010
Page 3

know (and had no means to discover) that Merrill Lynch developed auction rate CDO notes in an attempt to expand the pool of potential purchasers for its unsaleable CDO notes by creating a financial instrument that would appear to be akin to commercial paper and other AAA-rate short-term investments.  Rather, the extent of Merrill Lynch's CDO holdings, and the lack of legitimate market demand for these products that was obscured by Merrill Lynch's activities, did not become apparent until 2008, less than two years before Teva filed suit.

Teva additionally did not know and could not reasonably have discovered the extent to which the Offering Memoranda for the Merrill Lynch-Underwritten Securities omitted material information concerning the activities by which Merrill Lynch created false market perceptions concerning the nature of its auction rate CDO notes.  The same holds true for Merrill Lynch's intent to defraud, which was unknown and could not have been discovered through the exercise of reasonable diligence prior to the revelations of Merrill Lynch's manipulative and deceptive activities in 2008.

Merrill Lynch's May 31, 2006 settlement with the Securities and Exchange Commission ("SEC") did not reveal any of the foregoing facts regarding Merrill Lynch's unlawful conduct and scheme – facts that are essential to Merrill Lynch's violation of Section 10(b).[1]  The C&D Order provides no suggestion that Merrill Lynch had a practice of bidding for the issue in every single auction for CDO notes, facts that were unknown (and undiscoverable) prior to the state enforcement actions against Merrill Lynch.  Indeed, there is no suggestion that the C&D Order in particular, or the SEC's investigation in general, had even focused on Merrill Lynch's conduct in the unique market for CDO notes.

In light of *Merck & Co. v. Reynolds*, the statute of limitations for Teva's securities fraud claims could not have begun to run until 2008, less than two years before Teva filed suit. Because Teva did not know and could not reasonably have discovered the facts constituting Defendants' securities fraud, Defendants' claim that Teva's security law claims are barred by the statute of limitations must be rejected.

Respectfully submitted,

*/s/ David L. Schwarz*

David L. Schwarz

Enclosure

cc:   All Counsel

---

[1] Order Instituting Administrative Cease-and Desist Proceedings Making Findings and Imposing Remedial Sanctions and a Cease-and-Desist Order Pursuant to Section 8A of the Securities Act of 1933 and Section 15(b) of the Securities Exchange Act of 1934, *In re Bear, Stearns & Co.*, Admin. No. 3-12310, Release Nos. 8684 *et al.* (SEC May 31, 2006) ("C&D Order") (Mandel Decl. Exh. D (DN 26)).