UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
In re Merrill Lynch Auction Rate    :    09 MD 2030 (LAP)
Securities Litigation               :
----------------------------------X
This Document Relates To:           :
No. 10 Civ. 0124 (LAP)              :
                                    :
ICONIX BRAND GROUP, INCORPORATED,   :    OPINION AND ORDER

            Plaintiff,              :

            v.                      :

MERRILL LYNCH, PIERCE,FENNER &      :
SMITH INCORPORATED                  :
                                    :
            Defendant.              :
- - - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/04/12

LORETTA A. PRESKA, Chief United States District Judge:

      Plaintiff, Iconix Brand Group, Incorporated ("Iconix" or

"Plaintiff"), brings this action alleging federal and state

causes of action against Defendant Merrill Lynch, Pierce, Fenner

& Smith Incorporated ("Merrill").  The action alleges that

Defendant's activities related to certain auction rate

securities ("ARS") purchased by Plaintiff ran afoul of the law.

Merrill served as Iconix's primary banker and as the broker-

dealer of the relevant ARS at issue in this case.  Merrill moves

to dismiss the complaint ("Compl.") under Federal Rules of Civil

Procedure 9(b) and 12(b)(6) as well as Section 21D(b) of the

Private Securities Litigation Reform Act of 1995, 15 U.S.C.

§ 78u-4(b) (the "PSLRA").

Taking as true the factual allegations in the complaint and drawing all reasonable inferences in favor of Plaintiff, Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), the Court concludes that the complaint states no claim.  For the reasons stated below, Merrill's motion to dismiss is therefore granted in its entirety and with prejudice.

I.   BACKGROUND

Plaintiff alleges that it purchased Anchorage Finance Sub-Trusts I-IV ARS (the "Anchorage ARS") for which Merrill was a sponsor and broker-dealer as part of more than $100 million in ARS it purchased from Merrill in 2007.  (Compl. ¶¶ 1, 11-13.) Although the Anchorage ARS contained its own particularities, (see, e.g., Declaration of Timothy P. Burke in Support of Defendant's Motion to Dismiss Plaintiff's Complaint ("Burke Decl.") Ex. C (attaching Offering Memorandum of Anchorage Finance Sub-Trusts I-IV ("Anchorage Offering Memoranda"),) the details and operation of the ARS here are not materially different from the ARS described in other opinions in this Multidistrict Litigation.  The Court thus presumes familiarity with the ARS structure, the May 2006 Securities & Exchange Commission Order as to Merrill (the "SEC Order"), and Merrill's subsequent widely available public website disclosure regarding its ARS practices (the "Website Disclosure"), as previously

discussed.  See generally In re Merrill Lynch ARS Sec. Litig.
(Merrill IV), No. 09 MD 2030; 09 Civ. 9887, 2012 WL 523553
(S.D.N.Y. Feb. 15, 2012); In re Merrill Lynch ARS Sec. Litig.
(Merrill III), No. 09 MD 2030; 09 Civ. 9888, 2011 WL 536437
(S.D.N.Y. Feb. 9, 2011); In re Merrill Lynch ARS Sec. Litig.
(Merrill II), 758 F. Supp. 2d 264 (S.D.N.Y. 2010); In re Merrill
Lynch ARS Litig. (Merrill I), 704 F. Supp. 2d 378 (S.D.N.Y.
2010), aff'd, 671 F.3d 120 (2d Cir. 2011).

II.  DISCUSSION

        Iconix asserts claims against Merrill for market
manipulation and material misstatements and omissions under
section 10(b) of the Exchange Act and Rule 10b-5 promulgated
thereunder.  See 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  It
also asserts a claim for violation of Section 12(a)(1) of the
Securities Act of 1933 ("the 1933 Act").  See 15 U.S.C. §§ 77e,
77l(a).  Finally, Plaintiff asserts claims for common law fraud
and negligent misrepresentation.  Merrill moves to dismiss all
of these claims.  The Court addresses them in turn.

        A.  Legal Standard

        In assessing a motion to dismiss, the Court must accept all
non-conclusory factual allegations as true and draw all
reasonable inferences in the Plaintiff's favor.  Goldstein, 516
F.3d at 56.  To survive such a motion, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" Ashcroft v. Iqbal,
129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007)).  A pleading that offers
"labels and conclusions" or "a formalistic recitation of the
elements of a cause of action will not do." Twombly, 550 U.S.
at 555.  "Where a complaint pleads facts that are 'merely
consistent with' a defendant's liability, it 'stops short of the
line between possibility and plausibility of entitlement to
relief.'" Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S.
at 557) (internal quotation marks omitted).  For securities law
violation claims, the complaint also must meet the heightened
pleading requirements under Federal Rule of Civil Procedure 9(b)
and, for federal claims, the PSLRA, 15 U.S.C. § 78u-4(b).  ATSI
Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir.
2007).

　　　B.   Judicial Notice

　　　At the outset, the Court concludes that those materials
submitted by Merrill in connection with its pending motion are
properly before the Court.  Accordingly, the Court need not
convert this motion into one for summary judgment pursuant to
Fed. R. Civ. P. 12(d).  (See, e.g., Plaintiff's Memorandum of
Law in Opposition to Defendant's Motion to Dismiss Plaintiff's

4

Complaint ("Pl. Opp.") at 10 and n.3.)  This Court is not, contrary to Plaintiff's suggestion, limited to documents expressly incorporated into the complaint by reference. See, e.g., ATSI, 493 F.3d at 98 (the Court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit"); First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 770 (2d Cir. 1994) (the Court is entitled to take judicial notice of market phenomena such an economic downturn or market collapse); Cortec Indus., Inc., v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991) (the Court is entitled to consider transactional documents such as a stock purchase agreement, offering memorandum, and the like); In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 289 F. Supp. 2d 416, 421 n.6 (S.D.N.Y. 2003) ("The Court may take judicial notice of the existence of the internet bubble and its subsequent crash.").

The Court may and does also take judicial notice of such news articles as Merrill submits on the motion to the limited extent they are offered for the purpose of demonstrating the existence of information in the market and not for the truth of

the matters asserted therein.  See, e.g., Staehr v. Hartford
Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008); Condit
v. Dunne, 317 F. Supp. 2d 344, 357-58 (S.D.N.Y. 2004).  Apart
from these express holdings, this Court may take judicial notice
of any fact that is "capable of accurate and ready determination
by resort to sources whose accuracy cannot reasonably be
questioned."  See Fed. R. Evid. 201(b)(2).  Particularly in
light of the long history of this Multidistrict Litigation, the
Court is convinced that nothing offered by Merrill on this
motion or considered by the Court falls outside this
designation.

     C.   Plaintiff's Section 10(b) and Rule 10b-5 Claims

        1.   Plaintiff Fails to State a Claim

     The Court incorporates in its entirety its
misstatement/omission analysis of these same federal claims as
recently articulated in Merrill IV, 2012 WL 523553, at *6-12,
14-21.  As there, all of Plaintiff's purchases underpinning
these claims occurred after January 2007 (here, not until August
2, 2007).  (Compl. ¶¶ 1, 11; see also Affidavit of Warren Clamen
in Opposition to Defendant's Motion to Dismiss ("Clamen Aff.")
¶ 8.)  These purchases occurred well after Merrill produced its
Website Disclosure and even further after the May 2006 SEC
Order.  See also Merrill III, 2011 WL 536437, at *5-10; Merrill

II, 758 F. Supp. 2d at 277-301; Merrill I, 704 F. Supp. 2d at
387-402.   This Court has held squarely in this Multidistrict
Litigation that that these same disclosures "relieve [Merrill]
of liability on Plaintiff's misstatement and market manipulation
claims based on purchases made after the Website Disclosure."
Merrill III, 2011 WL 536437, at *6.   The claims in Merrill IV
that Merrill (and, to a lesser extent, Money Market One
Institutional Investment Dealer) made material misstatements or
omissions are, in substance, analogous in all material legal
respects to the same claims advanced here.   See, e.g., Merrill
IV, 2012 WL 523553, at *7-10, 14-17.   Plaintiff makes no new
argument about the sufficiency of those disclosures.   Nor does
Plaintiff make new arguments with respect to scienter, reliance,
or loss causation.   See, e.g., Merrill IV, 2012 WL 523553, at
*10-11, 17-21; see also Ashland Inc. v. Morgan Stanley & Co,
Inc., 700 F. Supp. 2d 453, 468-471 (S.D.N.Y. 2010), aff'd, 652
F.3d 333 (2d Cir. 2011).

Accordingly, applying the law applicable to this case, the
Court concludes that Plaintiff's complaint states no claim for a
violation of the federal securities laws.   Plaintiff's federal
securities claims are therefore dismissed with prejudice because
the claims cannot be remedied by further amendment of the
complaint.

7

2.   PSLRA Rule 11 Finding

The PSLRA requires courts "upon final adjudication of the action" to make specific Rule 11 findings.  15 U.S.C. § 78u-4(c)(1).  "[L]iability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers."  ATSI, 579 F.3d at 150 (internal quotation marks omitted).  Plaintiff's claims were not harassing or frivolous, and Merrill did not affirmatively allege any improper conduct or move for sanctions.  Therefore, the Court finds no basis to conclude that Plaintiff or its counsel violated their obligations under Rule 11(b).

D.   Plaintiff's Common Law Fraud Claim

The parties agree that the elements of common law fraud essentially mirror those involved in the section 10(b) claims. (See Memorandum of Law in Support of Defendant's Motion to Dismiss Plaintiff's Complaint ("Def. Mem.") at 34; Pl. Opp. at 29.)  Thus, for the same reasons that Plaintiff's section 10(b) claims fail, this claim fails.  See, e.g., Bui Indus. Enters. Of Am., Inc., 594 F. Supp. 2d 364, 371 (S.D.N.Y. 2009).

E.   Plaintiff's Section 12(a)(1) Claim

Section 12(a)(1) of the Securities Act of 1933 provides that "[a]ny person who offers or sells a[n unregistered] security in violation of Section [5] . . . shall be liable . . .

8

to the person purchasing such security from him." <u>See</u> 15 U.S.C. § 77l(a). Section 5 of the 1933 Act prohibits the offer or sale of securities for which there is no registration statement. <u>See</u> 15 U.S.C. § 77e.

### 1. Plaintiff's Claim in Time-Barred

The Court agrees with Merrill that Plaintiff's claim under Section 12(a)(1) is time-barred. Such a claim must be brought "within one year after the violation upon which it is based." <u>See</u> 15 U.S.C. § 77m. Courts therefore interpret the statute to bar claims filed more than one year after the purchase of the securities at issue. <u>See, e.g.</u>, <u>Joyce v. Bobcat Oil & Gas, Inc.</u>, No. 07 Civ. 1421, 2008 WL 919724, at *11 (M.D. Pa. Apr. 3, 2008); <u>Hanson v. Johnson</u>, No. 02 Civ. 3709, 2003 WL 21639194, at *5 (D. Minn. June 30, 2003); <u>Lillard v. Stockton</u>, 267 F. Supp. 2d 1081 (N.D. Okla. 2003); <u>Temple v. Gorman</u>, 201 F. Supp. 2d 1238 (S.D. Fla. 2002). Section 12(a)(1) is also subject to a statute of repose which states "[i]n no event shall any [] action be brought to enforce a liability created under Section [12(a)(1)] of this title more than three years after the security was bona fide offered to the public." 15 U.S.C. § 77m. The Court of Appeals has clarified that an unregistered security is "bona fide offered to the public" on the date it is first

offered.   See P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92,
106 (2d Cir. 2004).

Under either the statute of limitations or statute of
repose, Plaintiff's claim is untimely.   The transaction at issue
here occurred in August 2007.   (Clamen Aff. ¶ 8.)   The
unregistered Anchorage ARS was first offered to the public on
May 21, 2002.   (Burke Decl. Ex. C, at 1.)   Plaintiff filed this
complaint on January 7, 2010 [see dkt. no. 1].   Plaintiff filed
its complaint two and a half years after the transaction at
issue and more than seven years after the Anchorage ARS was
first offered.   Plaintiff's Section 12(a)(1) claim is therefore
time-barred.

Plaintiff argues that the Court should view the ARS at
issue here as unique and not susceptible to the statute of
limitations because "unlike the securities in the cases cited by
Merrill, ARS are sold and resold, and their interest rates reset
every 28 days."   (Pl. Opp. at 31.)   Plaintiff fails to cite any
authority for this proposition, however.   Moreover, adopting
Plaintiff's theory here would present two obvious problems.
First, it would effectively nullify any statute of limitations
on Section 12(a)(1) liability in the ARS context, plainly an
absurd result under the 1933 Act.   Second and even more simply,
while ARS may be "sold and resold" as Plaintiff describes, they

are not sold and resold as between Plaintiff and Merrill in permanently identical roles as purchaser and seller. Critically, Section 12(a)(1) establishes the liability of a seller "to the person purchasing such security from him." See 15 U.S.C. § 77l(a) (emphasis added). It would be curious indeed if Plaintiff's ongoing choice to participate in regular ARS auctions as a holder and potential seller of the security tolled the statute of limitations benefit Merrill derives as a prior seller of that ARS to Plaintiff. As Merrill's participation in the Anchorage ARS market after its initial sale to Plaintiff can only ever be characterized as a bidder on or potential re-purchaser of Plaintiff's ARS holdings, Plaintiff's theory of tolling in this case would extend what is meant to be a seller's liability to a purchaser in favor of a party acting as another potential seller of ARS securities. This proposal has no basis in equity.

Plaintiff also argues that the three-year statute of repose does not apply because these ARS were the subject of a private placement memorandum and never actually "offered to the public." (See Pl. Opp. at 32 and n. 18.) Ultimately, this Court need not reach that issue as Plaintiff's Section 12(a)(1) claim is already untimely as a result of the statute of limitations contained in 15 U.S.C. § 77m. Because the Court has rejected

11

Plaintiff's argument in favor of equitable tolling, the claim
remains time-barred.

### 2.   Plaintiff Fails to State a Claim

Even if not time-barred as described above, the Court
concludes that Plaintiff fails to state a Section 12 claim.  As
noted above, Section 5 of the 1933 Act prohibits the offer or
sale of securities for which there is no registration statement.
See 15 U.S.C. § 77e.  Rule 144A, however, provides a safe harbor
from the registration requirements of the 1933 Act for private
resales of restricted securities to a "qualified institutional
buyer" ("QIB").  See 17 C.F.R. § 230.144A; see also 15 U.S.C.
§ 77d(2) (exempting from registration requirements "transactions
by an issuer not involving any public offering"); SEC v. Ralston
Purina Co., 346 U.S. 119, 125 (1953) ("An offering to those who
are shown to be able to fend for themselves is a transaction
'not involving any public offering.'").  Accordingly, Section 12
claims based on Rule 144A offerings of unregistered securities
in private placements are subject to dismissal.  See In re
Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611, 626 (S.D.N.Y.
2007) ("[C]ourts in the Second Circuit have consistently
dismissed § 12(a)(2) claims based on Rule 144A offerings on the
grounds that 'offerings under Rule 144A are by definition non-
public, and offering memoranda distributed in connection with

12

such offerings cannot give rise to Section 12(a)(2) liability.'"); Dorchester Investors v. Peak Trends Trust, No. 99 Civ. 4696, 2003 WL 223466, at *1 n.2 (S.D.N.Y. Feb. 3, 2003) ("[T]he Second Circuit has held that the relevant language of Sections 12(a)(1) and 12(a)(2) is identical in meaning.").

Rule 144A defines a QIB as any corporation "that in the aggregate owns and invests on a discretionary basis at least $100 million in securities of issuers that are not affiliated with the entity." See 17 C.F.R. § 230.144A(a)(1)(i). QIB's are "presumed to be sophisticated investors capable of fending for themselves in the market place." See In re Safety-Kleen Corp. Bondholders Litig., 2004 WL 5003395, at *2 n.2; see also Resale of Restricted Securities: Changes to Method of Determining Holding Period of Restricted Securities Under Rules 144 and 145, Securities Act Release No. 33-6806, 53 Fed. Reg. 44016, 44028 (Nov. 1, 1988). Iconix raised nearly $640 million in capital between December 2006 and June 2007 alone. (Compl. ¶ 3.) Iconix invested nearly $200 million in ARS in 2007 alone. (See Def. Mem. at 26.) Additionally, Iconix's Executive Vice President and Chief Financial Officer Warren Clamen ("Clamen") affirmatively represented Iconix's QIB status to Merrill the same day as it purchased the Anchorage ARS by executing a document entitled "QUIBLIST APPLICATION CERTIFICATE OF RULE 144A

13

QUALIFIED INSTITUTIONAL BUYER AND SECTION 3(C)(7) QUALIFIED
PURCHASER" (the "QIB Certificate") and delivering it to Merrill.
(See Clamen Aff. ¶¶ 1, 6-9.)  While not required as a matter of
law to establish QIB status, Rule 144A states that a seller
"shall be entitled to rely upon . . . [a] certification by the
chief financial officer, a person fulfilling an equivalent
function, or other executive officer of the purchaser,
specifying the amount of securities owned and invested on a
discretionary basis by the purchaser as of a specific date on or
since the close of the purchaser's most recent fiscal year."
See 17 C.F.R. § 230.144A(d)(1)(iv); see also Pinnacle Commn'ns
Intern., Inc. v. Am. Family Mortg. Corp., 417 F. Supp. 2d 1073,
1083 (D. Minn. 2006); Faye L. Roth Revocable Trust v. UBS
Painewebber, Inc., 323 F. Supp. 2d 1279, 1301 (S.D. Fla. 2004).
Finally, after purchasing the Anchorage ARS, Iconix received a
trade confirmation that stated:  "NOT REGISTERED UNDER '33 ACT.
PURCHASER REPRESENTS IT MEETS QUALIFICATIONS; AGREES TO TRANSFER
UNDER AN EXEMPTION, INCL. 144A."  (See Burke Decl. ¶ 2, Ex. G.)
The relevant question being whether Merrill could, consistent
with Rule 144A, "reasonably believe" Iconix to be a QIB at the
time of the Anchorage ARS purchase, see 17 C.F.R.
§ 230.144A(d)(1), the Court agrees as a matter of law that it
could.

14

Plaintiff's attempts to rebut this finding are without
merit.  First, the Court does not agree with Plaintiff that
Defendant's apparently erroneous statement in its briefing that
it procured the QIB Certificate in January 2007, (see, e.g., Pl.
Opp. at 30; Def. Mem. at 26 n.12), rather than on August 2,
2007, creates a dispute of material fact as to whether Merrill
reasonably believed Iconix to be a QIB.  In fact, even accepting
Plaintiff's version of events as true, as the Court must on this
motion to dismiss, the QIB Certificate itself essentially
confirms Merrill's view that as of January 1, 2007, Iconix
"owned or invested on a discretionary basis $200 million of
'eligible securities'."  (See Clamen Aff. Ex. D.)  This
statement would of course bring Iconix within Rule 144A's own
definition of a QIB as of January 1, 2007.  See, e.g., 17 C.F.R.
§ 230.144A(a)(1)(i).  As noted above, a QIB Certificate such as
this one is not required as a matter of law to avoid Section 12
liability but only establishes Merrill's reasonable reliance on
the representations made therein.  See, e.g., Pinnacle Commn'ns,
417 F. Supp. 2d at 1083.

Nor does the Court agree that Pinnacle Commn'cs and Faye L.
Roth Revocable Trust are inapposite here, (see Pl. Opp. at 31
n.17), simply because Iconix finally sent Merrill its executed
QIB Certificate on the same day as the Anchorage ARS trade.  In

addition to the representation contained therein as described
above, Plaintiff's own papers concede that Merrill sought to
confirm its understanding of Iconix's QIB status in July 2007,
well prior to the Anchorage ARS purchase.  (See Clamen Aff. ¶ 6,
Ex. A.)  For that reason, Plaintiff's statement that "Merrill
could not reasonably have believed that Iconix was a QIB and
cannot rely on a certificate it procured after-the-fact to
protect itself from securities violations" is not only
conclusory and unsupported by the facts but borders on
misrepresentation.  Moreover, the Court must reject Plaintiff's
apparent attempt, albeit without any concrete authority, to
suggest that the Anchorage ARS or ARS in general are "securities
that do not apply here" for determining QIB status.  (See Pl.
Opp. at 31.)  Such reasoning is both circular and utterly
lacking in any merit.

     Ultimately, in spite of what Plaintiff alleges to be
Merrill's 'intimate knowledge of Iconix's investments and
financial structure," (Pl. Mem. at 31), Plaintiff fails to
allege with any specificity what concrete facts overcome
Merrill's belief that Iconix was a QIB within the meaning of
Rule 144A or overcome Iconix's own representation on August 2,
2007 that it had been a QIB for Rule 144A purposes since at
least January 1, 2007.  The Court is inclined to agree that it

16

is nonsensical that "after helping Iconix raise more than half-a-billion dollars in 2006 . . . [Merrill] 'could not reasonably have believed that Iconix was a QIB.'"  (See Defendant's Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss Plaintiff's Complaint ("Def. Reply Mem.") at 15 (quoting Pl. Opp. at 31).)

Because Rule 144A provides a safe harbor from the registration requirements of the 1933 Act for private resales of restricted securities to QIBs, Plaintiff's Section 12 claim must be dismissed with prejudice as a matter of law, even if otherwise timely.  See 17 C.F.R. § 230.144A; 15 U.S.C. § 77d(2); Ralston Purina Co., 346 U.S. at 125; In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d at 626; Dorchester Investors, 2003 WL 223466, at *1 n.2.  To the extent Plaintiff has requested leave to amend this claim, (see Pl. Opp. at 34 n.19), that request is denied as futile and because Plaintiff already declined a Court-ordered opportunity to amend its complaint prior to Merrill's motion to dismiss.  (See Def. Reply. Mem. at 15.)

F.   Plaintiff's Negligent Misrepresentation Claim

For the reasons already articulated in this Multidistrict Litigation, Plaintiff's negligent misrepresentation claim is preempted by New York's Martin Act, N.Y. Gen. Bus. Law § 352 to § 359-h.  See, e.g., Merrill IV, 2012 WL 523553, at *23 n.12;

17

Merrill III, 2011 WL 536437, at *12 n.6; see also Ashland Inc.,
700 F. Supp. 2d at 472-73, aff'd, 652 F.3d 333.   Applying the
law of the case, the Court does not therefore reach the merits
of Plaintiff's remaining claim and it must be dismissed with
prejudice.

CONCLUSION

For the foregoing reasons, Merrill's motion to dismiss
[dkt. no. 12 in 10 Civ. 0124; dkt. no. 137 in 09 MD 2030] is
granted in its entirety and with prejudice.   Pursuant to Rule
10.1 of the Rules of Procedure of the Judicial Panel on
Multidistrict Litigation, the Clerk of the Court shall send a
copy of this order to the Judicial Panel on Multidistrict
Litigation.   See Patricia D. Howard, A Guide to Multidistrict
Litigation, 124 F.R.D. 479, 485-86 (1989).


SO ORDERED.

Dated:      June 4, 2012
            New York, New York


LORETTA A. PRESKA
Chief U.S. District Judge


18