UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -X
In re Merrill Lynch Auction Rate    :    09 MD 2030 (LAP)
Securities Litigation               :
----------------------------------X
This Document Relates To:           :
No. 10 Civ. 2653 (LAP)              :
                                    :
CELLULAR SOUTH, INC.,               :    OPINION AND ORDER
                                    :
          Plaintiff,                :
                                    :
          v.                        :
                                    :
MERRILL LYNCH, PIERCE, FENNER &     :
SMITH INCORPORATED, et al.,         :
                                    :
          Defendants.               :
- - - - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/13/12

LORETTA A. PRESKA, Chief United States District Judge:

     Plaintiff, Cellular South, Inc. ("Cellular South" or

"Plaintiff"), brings this action alleging federal and state

causes of action against Defendant Merrill Lynch, Pierce, Fenner

& Smith Incorporated ("Merrill").  The action alleges that

Defendant's activities related to certain auction rate

securities ("ARS") purchased by Plaintiff ran afoul of the law.

Merrill served as the underwriter, placement agent, and auction

dealer of the relevant ARS at issue in this case.  Merrill moves

to dismiss the First Amended Complaint ("Compl.") under Fed. R.

Civ. P. 9(b) and 12(b)(6) as well as Section 21D(b) of the

Private Securities Litigation Reform Act of 1995, 15 U.S.C.

§ 78u-4(b) (the "PSLRA").

Taking as true the factual allegations in the complaint and drawing all reasonable inferences in favor of Plaintiff, Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), the Court concludes that the complaint fails to state a claim.  For the reasons stated below, Merrill's motion to dismiss is therefore granted in its entirety and with prejudice.

I.   BACKGROUND

Plaintiff alleges that between August 13, 2007 and January 25, 2008, it purchased from Merrill some $26 million worth of various ARS.  (See Compl. ¶¶ 1, 42.)  These purchases included an August 2007 purchase of some $20 million in ARS connected to preferred stock issued by the Federal Home Loan Mortgage Corporation ("Freddie Mac"), an October 2007 purchase of approximately $2.6 million in ARS issued by the Federal National Mortgage Association ("Fannie Mae"), and January 2008 purchases of some $2.4 million in additional Fannie Mae ARS and approximately $1 million in Bank of America ARS.  (See Compl. Ex. 1.)  Although these ARS contained their own particularities, (see, e.g., Declaration of Carl S. Burkhalter in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Burkhlater Decl.") Ex. C (attaching excerpts of the Freddie Mac ARS Private Placement Memorandum ("Freddie Mac Offering Memorandum")), the details and operation of the ARS

2

here are not materially different from the ARS described in
other opinions in this Multidistrict Litigation.  The Court thus
presumes familiarity with the ARS structure, the May 2006
Securities & Exchange Commission Order as to Merrill (the "SEC
Order"), and Merrill's subsequent widely available public
website disclosure regarding its ARS practices (the "Website
Disclosure"), as previously discussed.  See generally In re
Merrill Lynch ARS Litig. (Merrill IV), No. 09 MD 2030; 09 Civ.
9887, 2012 WL 523553 (S.D.N.Y. Feb. 15, 2012); In re Merrill
Lynch ARS Litig. (Merrill III), No. 09 MD 2030; 09 Civ. 9888,
2011 WL 536437 (S.D.N.Y. Feb. 9, 2011); In re Merrill Lynch ARS
Litig. (Merrill II), 758 F. Supp. 2d 264 (S.D.N.Y. 2010); In re
Merrill Lynch ARS Litig. (Merrill I), 704 F. Supp. 2d 378
(S.D.N.Y. 2010), aff'd, 671 F.3d 120 (2d Cir. 2011).

II.  DISCUSSION

     Cellular South asserts claims against Merrill for market
manipulation and material misstatements and omissions under
section 10(b) of the Securities Exchange Act of 1934 (the
"Exchange Act") and Rule 10b-5 promulgated thereunder.  See 15
U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5.  Plaintiff also asserts
independent violations of the North Carolina Securities Act,
N.C. GEN. STAT. §§ 78A-8, 78A-56(a)(2), and Mississippi Securities
Act, MISS. CODE ANN. § 75-71-717(A)(2).  Finally, Plaintiff asserts

3

common law claims for breach of contract and breach of the
implied covenant of good faith and fair dealing, for negligent
and/or fraudulent misrepresentations and omissions, and for
promissory estoppel.  Merrill moves to dismiss all of these
claims.  The Court addresses them in turn.

    A.  Legal Standard

    In assessing a motion to dismiss, the Court must accept all
non-conclusory factual allegations as true and draw all
reasonable inferences in the Plaintiff's favor.  Goldstein v.
Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  To survive such a
motion, "a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
A pleading that offers "labels and conclusions" or "a
formalistic recitation of the elements of a cause of action will
not do."  Twombly, 550 U.S. at 555.  "Where a complaint pleads
facts that are 'merely consistent with' a defendant's liability,
it 'stops short the line between possibility and plausibility
of entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting
Twombly, 550 U.S. at 557).  For federal securities law violation
claims, the complaint must also meet the heightened pleading
requirements under Fed. R. Civ. P. 9(b) and, for federal claims,

the PSLRA, 15 U.S.C. § 78u-4(b).  ATSI Commc'ns, Inc. v. Shaar
Fund, Ltd. (ATSI I), 493 F.3d 87, 99 (2d Cir. 2007).

    B.   Cellular South's Section 10(b) and Rule 10b-5 Claims

        1.   Plaintiff Fails to State a Claim

      The Court incorporates in its entirety its
misstatement/omission analysis of these same federal claims as
recently articulated in Merrill IV, 2012 WL 523553, at *6-12,
*14-21.  As there, Plaintiff is a large institutional investor
and all of Plaintiff's purchases underpinning the claims
occurred after January 2007 (here, not until August 13, 2007).
(See Compl. ¶¶ 1, 42.)  These purchases occurred well after
Merrill produced its Website Disclosure and even further after
the May 2006 SEC Order.  See also Merrill III, 2011 WL 536437,
at *5-10; Merrill II, 758 F. Supp. 2d at 277-301; Merrill I, 704
F. Supp. 2d at 387-402.  This Court has held squarely in this
Multidistrict Litigation that these same disclosures "relieve
[Merrill] of liability on Plaintiff's misstatement and market
manipulation claims based on purchases made after the Website
Disclosure."  Merrill III, 2011 WL 536437, at *6.  The claims in
Merrill IV that Merrill (and, to a lesser extent, Money Market
One Institutional Investment Dealer) made material misstatements
or omissions are, in substance, analogous in all material legal
respects to the same claims advanced here.  See, e.g., Merrill

IV, 2012 WL 523553, at *7-10, *14-17.  Plaintiff makes no new argument about the sufficiency of those disclosures.  Nor does Plaintiff make new arguments with respect to scienter, reliance, or loss causation.  See, e.g., Merrill IV, 2012 WL 523553, at *10-11, *17-21; see also Ashland Inc. v. Morgan Stanley & Co., Inc., 700 F. Supp. 2d 453, 468-471 (S.D.N.Y. 2010), aff'd, 652 F.3d 333 (2d Cir. 2011).

To the extent Plaintiff speculates about what it deems a "Withdrawal Decision" Merrill is alleged to have made sometime "in the weeks before" Plaintiff first purchased the relevant ARS, (see, e.g., Compl. §§ 3-4, 48), the Court finds such allegations entirely conclusory.  Apart from various citations to internal Merrill analyst reports and Merrill's general financial health in the third quarter of 2007, (see, e.g., Compl. ¶¶ 61-78 & n.5), Plaintiff offers no concrete facts supporting such an allegation.  Moreover, Plaintiff's own allegations concede that various ARS markets remained liquid until at least mid-February 2008.  (See id. ¶ 12.)  Nor has Plaintiff provided any concrete support for the proposition that Merrill's representations as to the liquidity of these ARS were not truthful when they were made.  See, e.g., In re IPO Sec. Litig., 544 F. Supp. 2d 277, 285 (S.D.N.Y. 2008) ("Where a complaint alleges a false statement, the complaint must 'state

with particularity the specific facts in support of
[plaintiffs'] belief that [defendants'] statements were false
when made.'") (quoting Rombach v. Chang, 355 F.3d 164, 172 (2d
Cir. 2004)).  Here, Plaintiff's allegations would require the
Court to pile inference upon inference and they therefore
"stop[] short of the line between possibility and plausibility
of entitlement to relief."  See Iqbal, 556 U.S. at 678.
Finally, for the reasons discussed elsewhere in this
Multidistrict Litigation, Plaintiff was at all times on notice
of Merrill's ability to participate in the ARS market and of its
ability to stop participating at any time and for any reason.
See, e.g., Merrill IV, 2012 WL 523553, at *6-12.

Accordingly, applying the law applicable to this case, the
Court concludes that Plaintiff's complaint states no claim for a
violation of the federal securities laws.  Plaintiff's federal
securities claims are therefore dismissed with prejudice because
the claims cannot be remedied by further amendment of the
complaint.[1]

---

[1] Because the Court finds that Plaintiff fails to state a federal
securities law claim it does not reach the issue of whether such
a claim, if sufficiently alleged, would be time-barred.  (See
Memorandum of Law in Support of Merrill's Motion to Dismiss
Plaintiff's First Amended Complaint ("Def. Mem.") at 18.)

### 2.   PSLRA Rule 11 Finding

The PSLRA requires courts "upon final adjudication of the action" to make specific Rule 11 findings.  15 U.S.C. § 78u-4(c)(1).  "[L]iability for Rule 11 violations requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd. (ATSI II), 579 F.3d 143, 150 (2d Cir. 2009) (internal quotation marks omitted).  Plaintiff's claims were not harassing or frivolous, and Merrill did not affirmatively allege any improper conduct or move for sanctions.  Therefore, the Court finds no basis to conclude that Plaintiff or its counsel violated their obligations under Rule 11(b).

### C.   Cellular South's State Securities Law Claims

#### 1.   North Carolina Securities Law

Plaintiff alleges violations of the North Carolina Securities Act, N.C. GEN. STAT. §§ 78A-8, 78A-56(a)(2).  The Court concludes that Plaintiff cannot state a claim under either section of that statute, however, for the same reason it failed to state a federal securities law claim.  Section 78A-8 prohibits the use of material omissions or manipulative conduct in the sale or purchase of a security and "closely parallels the Rule 10b-5 antifraud provision of the Securities Exchange Act." See State v. Davidson, 506 S.E.2d 743, 748 (N.C. Ct. App. 1998)

("Cases construing the federal rule are instructive when
examining our statute."). Similarly, Section 78A-56(a)(2)
provides civil liability for individuals who offer or sell
securities by way of "any untrue statement or a material fact or
any omission to state a material fact . . . ." N.C. GEN. STAT.
§ 78A-56(a)(2). Both sections describe claims sounding in fraud
and therefore require a material misrepresentation, omission, or
manipulative conduct to sustain a claim. See, e.g., Bob
Timberlake Collection, Inc. v. Edwards, 626 S.E.2d 315, 322
(N.C. Ct. App. 2006). While the heightened pleading
requirements of the PSLRA do not apply to state law causes of
action such as these, see Norman v. Solomon Smith Barney, Inc.,
350 F. Supp. 2d 382, 391 (S.D.N.Y. 2004), such claims must still
satisfy the heightened pleading requirements for fraud claims in
Fed. R. Civ. P. 9(b). The Court has already found that
Plaintiff fails to state an actionable misrepresentation,
omission, or manipulative conduct in connection with its federal
securities law claims. Accordingly, for the same reason that
Plaintiff's section 10(b) claims fail, this claim fails. See,
e.g., Bui v. Indus. Enters. of Am., Inc., 594 F. Supp. 2d 364,
371 (S.D.N.Y. 2009).

### 2.   Mississippi Securities Law

Plaintiff alleges violations of the Mississippi Securities Act, MISS. CODE ANN. § 75-71-717(a)(2).  Here again, the Court concludes that Plaintiff cannot state a claim under that statute, as it has already concluded Plaintiff has failed to allege an actionable misrepresentation, omission, or manipulative conduct in connection with its federal securities law claims.  Section 75-71-717(a)(2) imposes civil liability for the offer or sale of security involving "any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading."  MISS. CODE ANN. § 75-71-717(a)(2).  Like the North Carolina statute above, this claim sounds in fraud and the heightened pleading requirement of Fed. R. Civ. P. 9(b) therefore applies. Accordingly, for the same reason that Plaintiff's section 10(b) claims fail, this claim fails.  Bui, 594 F. Supp. 2d at 371.

### D.   Cellular South's Common Law Claims

#### 1.   Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff alleges that it entered into an oral contract with Merrill independent of and entirely without reference to the copious disclosures contained within the various ARS transactional documents at issue in this case.  (See Compl.

10

¶ 196; Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss First Amended Complaint ("Opp.") at 37.)  Specifically, Plaintiff claims that it entered into an independent and enforceable contract with Merrill when Merrill "promised Cellular South's agent, Sovereign, to sell it auction rate securities that were 'very liquid' in exchange for payment.'" (See Opp. at 37.)  In order to sustain a claim for breach of contract or breach of the implied covenant of good faith and fair dealing, however, Plaintiff must first adequately allege the existence of such a contract wholly separate from the ARS transaction documents.  See, e.g., Favre Property Mgmt., LLC v. Cinque Bambini, 863 So. 2d 1037, 1044 (Miss. Ct. App. 2004) ("The elements of a breach of contract [include] the existence of a valid and binding contract. . . ."); see also Patton v. State Bank & Trust Co., 936 So. 2d 391, 394 (Miss. Ct. App. 2006) (noting that absent the existence of a contract, "there can be no breach of the covenant of good faith and fair dealing").

Here, Plaintiff's assertion of an independent and enforceable oral contract based solely on Merrill's pre-contractual language is implausible.  The existence of such a contract would require "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite,

11

(4) parties with legal capacity to make a contract, (5) mutual
assent, and (6) no legal prohibition precluding contract
formation." Rotenberry v. Hooker, 864 So. 2d 266, 270 (Miss.
2003) (internal quotation marks omitted).  The Court finds that
in addition to being highly general and prospective in nature,
Merrill's language regarding "very liquid" securities is not the
promise for which Plaintiff gave consideration.  Rather,
Plaintiff's consideration was exchanged for nothing more or less
than the promises (and relevant disclaimers) contained within
the ARS transactional documents.  Plaintiff cannot now claim
that it paid the same valuable consideration for both the
qualified promises made in the ARS transactional documents and
an entirely independent and enforceable oral promise made prior
to executing the ARS purchases at issue.  Moreover, such a
promise of unlimited and unqualified liquidity would be highly
illusory and insufficiently definite and its enforcement
therefore unreasonable.  See, e.g., Leach v. Tingle, 586 So. 2d
799, 802 (Miss. 1991) ("In ascertaining whether a contract is
sufficiently definite to be enforceable, we have accepted that
the court may employ a standard of reasonableness.").  Finally,
such a contract would clearly lack Merrill's mutual assent in
light of the copious and repeated disclaimers Merrill made

12

regarding the liquidity risks associated with its ARS holdings. (See, e.g., Burkhalter Decl. Exs. B, C.)

For these reasons the Court concludes that Plaintiff has failed to allege the existence of the contract it now claims has been breached. Accordingly, Plaintiff's claims for breach of contract and breach of the implied covenant of good faith and fair dealing are dismissed with prejudice.

> ### 2.   Negligent and/or Fraudulent Misrepresentation Claims

While the heightened pleading requirements of the PSLRA do not apply to common law causes of action such as these, see Norman, 350 F. Supp. 2d at 391, any fraudulent misrepresentation claim must still satisfy the heightened pleading requirements for fraud claims in Fed. R. Civ. P. 9(b). Moreover, even Plaintiff's negligent misrepresentation claim must meet the pleading standard articulated in Iqbal—that is, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Here, Plaintiff fails to plead facts even merely consistent with Defendant's liability. The Court has already concluded that Plaintiff fails to state an actionable misrepresentation, omission, or manipulative conduct in connection with its federal

13

securities law claims.  Because it is also a required element of
Plaintiff's common law claims for fraudulent or negligent
misrepresentation, the failure to state an actionable
misrepresentation or omission is fatal to these claims
regardless of the applicable pleading standard.  See Schmidt v.
Catholic Diocese of Biloxi, 18 So. 3d 814, 831 (Miss. 2009);
Hazlehurst Lumber Co., Inc. v. Miss. Forestry Comm'n, 983 So. 2d
309, 313 (Miss. 2008).

Similarly, because this Court has already determined that
Plaintiff raises no new arguments regarding its reasonable
reliance, see Merrill IV, 2012 WL 523553, at *6-12, *14-21, its
inability to establish that required element is fatal to both
its fraudulent misrepresentation and negligent misrepresentation
claims.  See Schmidt, 18 So. 3d at 831; Hazlehurst, 983 So. 2d
at 313.  Finally, for the reasons noted above and incorporated
by reference from this Court's prior analysis of the analogous
federal claims, Plaintiff is unable to plead intent, as it must
in order to prevail on its fraudulent misrepresent claim.
Schmidt, 18 So. 3d at 831.  For these reasons, Plaintiff's
fraudulent misrepresentation and negligent misrepresentation
claims are dismissed with prejudice.

### 3.   Promissory Estoppel

Promissory estoppel is an equitable doctrine that "may arise from the making of a promise, even though without consideration, if it was intended that the promise should be relied upon and in fact it was relied upon . . . and if a refusal to enforce it would be virtually to sanction the perpetuation of a fraud or would result in other injustice." C.E. Frazier Constr. Co., Inc., v. Campbell Roofing & Metal Works, Inc., 373 So. 2d 1036, 1038 (Miss. 1979). A claimant must identify a "representation [that] is promissory rather than as to an existing fact." Suddith v. Univ. of Southern Miss., 977 So. 2d 1158, 1180 (Miss. Ct. App. 2007). Moreover, any party invoking this doctrine is required to have acted in "justifiable reliance on the representation." Miss. Dep't of Pub. Safety v. Carver, 809 So. 2d 713, 718 (Miss. Ct. App. 2001). Here, Plaintiff points to a Merrill employee's description of ARS as "very liquid investments" at some point in 2007 to early 2008. (See Compl. ¶¶ 43, 207-08.) The parties disagree as to whether this statement was promissory or merely described an existing fact at the time it was made. (See, e.g., Def. Mem. at 20; Opp. at 39.) Ultimately, the Court need not resolve that question because even assuming the statement was

15

promissory in nature, Plaintiff's claim fails as a matter of law.

First, this Court has already concluded that Plaintiff failed to provide any concrete support for the proposition that Merrill's representations as to the liquidity of these ARS were not truthful at the time those statements were made.  See II.B.1, supra.  The Mississippi Supreme Court has made clear that:

> A true statement as to the present intention of a party with regard to his future act is not the foundation upon which an estoppel may be built. A person cannot be bound by any rule of morality or good faith, not to change his intention nor can he be precluded from showing such change merely because he has previously represented that his intentions were once different from those which he eventually executed.

Cook v. Farley, 15 So. 2d 352, 357 (Miss. 1943) (citing 19 Am. Jur. 2d Estoppel & Waiver § 52).  In other words, absent some clear indicia that Merrill's forward-looking statement was untrue at the time it was made, a subsequent lack of ARS liquidity because of changed circumstances in the market is not a basis upon which promissory estoppel may be based.

Second, even if all other requirements for a promissory estoppel claim were met, Plaintiff would still be required to demonstrate that its reliance on any such representation was justifiable.  See Carver, 809 So. 2d at 718.  The Court has

16

already concluded that Plaintiff's reliance was not justifiable as a matter of law in light of Merrill's own disclosures and the information available to Plaintiff through the market. See Merrill IV, 2012 WL 523553, at *10-11, *17-21. Plaintiff's inability to satisfy this required element is fatal to its promissory estoppel claim.

Accordingly, even if the statement at issue were promissory in nature, the Court cannot conclude that its "refusal to enforce it would be virtually to sanction the perpetuation of a fraud or would result in other injustice." See C.E. Frazier Constr. Co., 373 So. 2d at 1038. Plaintiff's promissory estoppel claim is therefore dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Merrill's motion to dismiss Cellular South's First Amended Complaint [dkt. no. 203 in 09 MD 2030] is granted in its entirety and with prejudice. The Clerk of the Court is directed to mark related civil action 10 Civ. 2653 closed and all pending motions denied as moot. As they have remained unidentified by Cellular South, the Clerk of the Court is further directed to terminate Defendants "John Does A-J" and "John Does A through D" in both 09 MD 2030 and 10 Civ. 2653. Pursuant to Rule 10.1 of the Rules of Procedure of the

17

Judicial Panel on Multidistrict Litigation, the Clerk of the

Court shall send a copy of this Order to the Judicial Panel on

Multidistrict Litigation.  See Patricia D. Howard, A Guide to

Multidistrict Litigation, 124 F.R.D. 479, 485-86 (1989).


SO ORDERED.

Dated:     August *13*, 2012
           New York, New York

                                   _Loretta A. Preska_
                                   LORETTA A. PRESKA
                                   Chief U.S. District Judge

18