KELLOGG, HUBER, HANSEN, TODD, EVANS & FIGEL, P.L.L.C.

SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3209

(202) 326-7900

FACSIMILE:
(202) 326-7999

September 7, 2012

**VIA ECF**

Honorable Loretta A. Preska
United States District Court
Southern District of New York
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:   *In re Merrill Lynch & Co., Auction Rate Securities (ARS) Marketing Litigation*, MDL No. 2030

            *Louisiana Pacific Corp. v. Money Market 1 Institutional Investment Dealer, et al.*, No. 1:09-cv-09887-LAP

Dear Chief Judge Preska:

     This firm represents Plaintiff Louisiana Pacific Corporation ("LP") in the above-captioned case. Pursuant to Federal Rule of Civil Procedure, Local Civil Rules 55.1 and 55.2, and this Court's Order dated July 10, 2012, LP respectfully submits this letter for Judgment by Default against Defendant Money Market 1 Institutional Investment Dealer ("MM1").

     A.   Background

     This action commenced on July 31, 2009 with the filing of a summons and complaint in the United States District Court for the Northern District of California. *See* Declaration of Andrew C. Shen in Support of Motion For Judgment By Default Against MM1 ¶ 2 ("Shen Decl.") (DN 271). On August 13, 2009, Defendant MM1 was served by hand with the summons and complaint. *Id.* ¶ 3. On December 1, 2009, the United States Judicial Panel on Multidistrict Litigation conditionally transferred a portion of this action to be consolidated into a pending Multidistrict Litigation proceeding in the United States District Court for the Southern District of New York, *In re Merrill Lynch & Co. Auction Rate Securities (ARS) Marketing Litigation*, 1:09-md-02030-LAP. *Id.* ¶ 4.

     On March 8, 2010, and pursuant to Local Civil Rule 5.2, LP served the First Amended Complaint on MM1 through Electronic Case Filing ("ECF"). *Id.* ¶ 5. On April 26, 2010, MM1 moved to dismiss the First Amended Complaint. DN 141. In an Opinion and Order dated

Hon. Loretta A. Preska
September 7, 2012
Page 2

February 15, 2012, this Court granted MM1's motion to dismiss in part and denied it in part. DN 251. Specifically, the Court held that the First Amended Complaint stated a claim for breach of fiduciary duty as against MM1. *Id.* at 68. On July 10, 2012, this Court ordered MM1 to answer LP's First Amended Complaint on or before August 10, 2012. DN 267. MM1 has not filed an answer to LP's First Amended Complaint as of the date of submission of this letter and has not otherwise participated in discovery in this case. Shen Decl. ¶ 7. On August 17, 2012, upon LP's request, the Clerk of this Court entered a Certificate of Default as to MM1. DN 272.

    B.  Discussion

In determining whether to grant default judgment, the Court should consider "1) whether the defendant's default was willful; 2) whether defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, 02-CV-9044(LTS)(GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993) (providing that the court is guided by the same factors that apply to a motion to set aside entry of default).

Each of these factors is easily satisfied here. MM1's failure to respond to the First Amended Complaint "sufficiently demonstrates willfulness." *United States v. Hemberger*, No. 11-CV-2241(JS), 2012 WL 1657192, at *2 (E.D.N.Y. May 7, 2012); *see also Indymac Bank, F.S.B. v. National Settlement Agency, Inc.*, 07-CV-6865(LTS)(GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007). Indeed, the Court specifically advised counsel for MM1 that it would enter a default judgment should MM1 fail to answer the Complaint by August 10, 2012. With respect to the second factor, "[w]here no defense has been presented and '[w]here, as here, the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages will be taken as true.'" *Hemberger*, 2012 WL 1657192, at *2 (quoting *Chen v. Jenna Lane, Inc.*, 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998)). Finally, the third factor is satisfied, as denying this motion would leave "no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, 06-CV-14226(RLC)(RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008).

    C.  Damages Calculation

The appropriate amount of damages in this case is a straight forward mathematical exercise.[1] Under settled California law, a plaintiff is entitled to benefit of the bargain damages in a case alleging breach of fiduciary duty. As the Ninth Circuit has held:

---

[1] The Second Circuit has held that "[w]ith regard to liability, the concept of proximate cause supplies the legal nexus between act and injury, and provides a necessary basis for awarding compensation. Where it is properly alleged in the complaint, proximate cause – going to liability – is completely and irrefutably established upon the defendant's default." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992); *see Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974); *see also Benny v. Pipes*, 799 F.2d 489, 495 (9th Cir. 1986); *Sunnyside Dev. Co. v. Chartis Specialty Ins. Co.*, No. 10 Civ. 3707(PAC), 2012 WL

Hon. Loretta A. Preska
September 7, 2012
Page 3

> The established California measure of damages for breach of fiduciary duty "in advising plaintiff to switch into unsuitable investments" is the difference between what the plaintiff has now and what the plaintiff would have had on the date the fiduciary relation closed if plaintiff had retained the original portfolio and had received the benefit of its appreciation and dividends. California rejects the view that such damages are conjectural and speculative and that the plaintiff might have done worse "if left to her own devices."

*Vunich v. Paine, Webber, Webber, Jackson & Curtis, Inc.*, 803 F.2d 454, 461-62 (9th Cir. 1986) (quoting *Hobbs v. Bateman Eichler, Hill Richards, Inc.*, 164 Cal. App. 3d 197 (App. Ct. 1985); *Twomey v. Mitchum, Jones & Templeton, Inc.*, 22 Cal. App. 2d 690, 730-31 (App. Ct. 1968)); *see also* Cal. Civ. Code § 3333 ("For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could be anticipated or not.").

LP's damages in this case arising out of the Merrill Lynch-underwritten securities is detailed in the accompanying Statement of Damages. As a direct and proximate result of MM1's breach of fiduciary duty, LP purchased a total of $55.575 million in unsuitable securities underwritten by Merrill Lynch:

| Security | Date of Purchase | Amount Held By LP |
|---|---|---|
| Alesco I | 7/16/2007 | $20,000,000 |
| Alesco II | 7/30/2007 | $10,000,000 |
| Lakeside CDO I | 5/8/2007 & 6/8/2007 | $14,675,000 |
| Lakeside CDO II | 4/4/2007 | $5,000,000 |
| Cascade Funding CDO I | 2/5/2007 | $3,700,000 |
| South Coast Funding V | 6/20/2007 | $2,200,000 |

*See* Declaration of Bob Hopkins at ¶ 2. In July and September 2011, LP sold its holdings of the Alesco Series I and II and South Coast Funding V Series A-2, which it had purchased for a total of $32.2 million, for $15.001 million. *Id.* at ¶ 3. LP continues to hold the Lakeside CDO I and II and Cascade Funding CDO I securities, which it had purchased for a total $23.375 million, but which are now valued by Merrill Lynch at only $1.034 million. *Id.* at ¶ 4. LP has received a total of $5.904 million in interest payments up through September 4, 2012, on the Merrill Lynch-underwritten securities.

During the time period that it held the Merrill Lynch-underwritten securities, the Lipper Institutional Money Market Index – a standard benchmark index for money market investments – earned an average of 1.57% interest annually. *Id.* at ¶ 5. Accordingly, had LP invested its

---

245214, *7 (S.D.N.Y. Jan. 26, 2012) (once entry of default is entered, "the well-pleaded factual allegations of the complaint [were] taken as true, which included [plaintiff's] allegations of proximate cause") (internal quotation marks omitted).

Hon. Loretta A. Preska
September 7, 2012
Page 4

$55.575 million in suitable investments – rather than the Merrill Lynch-underwritten securities, it would have earned $4,106,675 in interest during the relevant time period.[2]

As set forth in the enclosed Statement of Damages, and as summarized below, LP is therefore entitled to a damages award of $37,742,192:

| | |
|---|---:|
| Purchase price of unsuitable Merrill Lynch securities: | $ 55,575,000 |
| Amount LP would have earned from suitable investments: | $ 4,106,675 |
| Value of securities currently held by LP: | $ (1,034,120) |
| Cash received from LP's sale of securities: | $ (15,001,000) |
| Interest payments received by LP: | $ (5,904,363) |
| **Total:** | **$ 37,742,192** |

For the reasons set forth above, LP respectfully requests that this Court enter a Judgment by Default in the amount of $37,742,192. A proposed Order is attached.

Respectfully submitted,

By: /s/ *Andrew C. Shen*

Mark C. Hansen
David L. Schwarz (206257)
Kevin J. Miller (*pro hac vice*)
Andrew C. Shen (*pro hac vice*)
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036

*Attorneys for Plaintiff Louisiana Pacific Corporation*

---

[2] An "award of compound interest is appropriate in" cases involving breaches of fiduciary duty. *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1586 (App. Ct. 1994).